UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| MARIA DEVERANT : | : | |
| 1036 Limekiln Pike | : | CIVIL ACTION NO. 02-CV-3801 |
| Maple Glen, Pennsylvania 19002 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| versus | : | |
| | : | |
| SELECTIVE INSURANCE COMPANY | : | |
| INC. | : | |
| 40 Wantage Avenue | : | |
| Branchville, New Jersey 07890 | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MOTION TO QUASH JURY DEMAND

NOW INTO COURT, through undersigned counsel, comes the Defendant, Selective

Insurance Company, Inc. ("Selective"), A Write-Your-Own Carrier participating in the U.S.

Government's National Flood Insurance Program and appearing herein in its "fiduciary"[1]

capacity as the "fiscal agent of the United States,"[2] and moves this Honorable Court to quash the

Plaintiff's jury demand as to all claims against Selective on the following grounds: (1) the

Seventh Amendment right to a jury trial does not apply; (2) the National Flood Insurance Act of

1968, as amended (42 U.S.C. § 4001, *et seq.* - which must be strictly construed and enforced)

and the controlling federal, statutory and regulatory laws do not allow for jury trials in matters

involving the National Flood Insurance Program; and (3) if the Defendant's Rule 12(b)(6)

Motion to Dismiss the state law based extra-contractual claims is granted, the only thing left will

---

[1] 44 C.F.R. Pt. 62.23(f).

[2] 42 U.S.C. §4071(a)(1); *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998)

be the breach of contract claim of the Plaintiff.  As the Court is well aware, the Standard Flood

Insurance Policy (which is itself a codified federal regulation found at 44 C.F.R. Part 61, App.

A(1))  is to be interpreted only by the Court, as coverage under the Policy (or the determination

of a breach of the terms of the Policy) is a matter of law (not fact) for the Court to decide.  As

such, there would be nothing for a jury to decide, and the request for a jury should be denied.

WHEREFORE, Defendant, SELECTIVE INSURANCE COMPANY, INC., prays that

this Honorable Court will issue an Order quashing the Plaintiff's jury demand for the reasons as

set forth in the accompanying Memorandum in Support of this Motion.

Respectfully submitted,

_____
DANIEL KREBBS
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
1845 Walnut St., 21st Fl.
Philadelphia, Pennsylvania 19103
Telephone: 215-575-2793
Local Counsel for Defendant,
Selective Insurance Company, Inc.

NIELSEN LAW FIRM, LLC
Gerald J. Nielsen, La.S.B. # 17078
Attorney-in-Charge
The Pelican Building
2121 Airline Drive, Suite 200
Metairie, Louisiana 70001
(504) 837-2500
(504) 832-9165 FAX
Of Counsel

Date: _____
\01_21\LIAB\DDK\LLPG\366161\KSZ\15036\00113

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing pleading has been served on Plaintiff's counsel, Patrick G. Murphy, Esq., Kelley and Murphy, Union Meeting Corporate Center V, 925 Harvest Drive, Suite 160, Blue Bell, Pennsylvania 19422.

_____
DANIEL D. KREBBS, ESQUIRE

Done, this ____ day of November, 2002
\01_21\LIAB\DDK\LLPG\366161\KSZ\15036\00113

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| MARIA DEVERANT | : | |
| 1036 Limekiln Pike | : | CIVIL ACTION NO. 02-CV-3801 |
| Maple Glen, Pennsylvania 19002 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| versus | : | |
| | : | |
| SELECTIVE INSURANCE COMPANY | : | |
| INC. | : | |
| 40 Wantage Avenue | : | |
| Branchville, New Jersey 07890 | : | |
| | : | |
| Defendant. | : | |
| | : | |

## MEMORANDUM IN SUPPORT OF MOTION TO QUASH JURY DEMAND

MAY IT PLEASE THE COURT:

Defendant, Selective Insurance Company, Inc. ("Selective"), through undersigned counsel, appearing herein as a Write-Your-Own ("WYO") Carrier participating in the U.S. Government's National Flood Insurance Program ("NFIP") pursuant to the National Flood Insurance Act ("NFIA") of 1968, as amended (see 42 U.S.C. 4001, *et. seq.*), and as the "fiscal agent of the United States"[1], files this Memorandum in Support of its Motion to Quash the Plaintiff's Jury Demand as to all claims of the Plaintiff. There is no right to a jury trial in this matter for the reasons discussed below.

---

[1] *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998).

-4-

## PREAMBLE

The instant motion has been filed because of the impact this decision would have on a

**$400 billion** program federally funded through the United States Treasury.  The basis for this

Motion is found in the holdings in the cases of *Sandia Oil Co., Inc. v. Beckton*, 889 F.2d 258

(10th Cir. 1989); *Kolner v. Director, Federal Emergency Management Agency,* 547 F.Supp. 828

(N.D. Ill., E.D. 1982); *Latz v. Gallagher*, 550 F.Supp. 257 (W.D. Mich., S.D., 1982); *Latz v.*

*Gallagher,* 562 F.Supp. 690, (W.D. Mich., S.D., 1983); and *Yonker v. Guifrida,* 581 F.Supp.

1243 (D.W.Va. 1984).  Most recently, this same motion on this exact issue was granted by the

U.S. District Court for the Southern District of Florida in a matter entitled "*Guerra v. Union*

*American Insurance Company*," Case No. 01-5089 (S.D.Fla. 08/21/2002).[2]  In April 2002, the

U.S. District Court for the Southern District of Florida also granted Defendant's Motion to

Quash Jury Demand in a matter entitled *"Chaviano v. State Farm Fire and Cas. Co.*," Case No.

01-0827 (S.D.Fla. 04/09/2002).[3]  Earlier this year, the U.S. District Court for the Southern

District of Florida in *Jones v. Hartford Fire Ins. Co.*, No. 01-8087-CIV-ZLOCH, (S.D.Fla.

02/25/2002),[4] analyzed this issue and held that "sovereign immunity of the United States

precludes jury trials in actions brought pursuant to 42 U.S.C. §4072." *Id.* at *3.  The United

States District Courts for the Northern and Middle Districts of Florida have likewise held that

jury trials are unavailable in matters involving Write-Your-Own Program Carriers (such as

Defendant Selective) in *Nutt v. Bankers Ins. Co.*, Case No. 3:96cv549/RV (N.D.Fla. 2000)[5] and

---

[2] The Order in *Guerra* is attached hereto as "Exhibit 1".

[3] The Order in *Chaviano* is attached hereto as "Exhibit 2".

[4] The Order in *Jones* is attached hereto as "Exhibit 3".  In observing its duty of candor to the Court, Selective notes that plaintiff failed to oppose defendant's motion in *Jones*.

[5] The Order in *Nutt* is attached hereto as "Exhibit 4".

in *Dere v. Bankers Ins. Co.*, Case No. 6:98-cv-1408-22C (M.D. Fla. 06/06/2000),[6] respectively.

Further, the U.S. District Court for the Eastern District of North Carolina in the case entitled

*"Pierce v. Bankers Insurance Company, et. al.,"* Case No. 7:00-CV-152(F)(1)[7] has held that jury

trials are not available.[8]

A key to whether the Plaintiff is entitled to a jury demand is the fact that, for all claims

for benefits pursuant to the Standard Flood Insurance Policy ("SFIP") at issue in the instant case,

it is U.S. Treasury funds that are at stake (and <u>not</u> the assets of Selective). Any claim payment

under the SFIP that may be ordered by this Honorable Court would in fact be an order to pay

U.S. Treasury funds. As such the regulations and restrictions on the ability to recover these U.S.

Treasury funds must be observed, and nowhere in the controlling federal law has Congress

allowed for jury trials in matters involving the National Flood Insurance Program (even when a

WYO Carrier issued the SFIP and not FEMA).

Other courts have observed that the rules and restrictions for recovery of U.S. Treasury

funds apply regardless of whether FEMA or a WYO carrier is the proper defendant. For

example, after analyzing the issue of whether prejudgment interest could be awarded against a

WYO Program carrier (such as Selective), the U.S. Eleventh Circuit in *Newton v. Capital

Assurance Corporation*, 245 F.3d 1306, 1312 (11th Cir. 2001), *rehearing denied*, 263 F.3d 172

(11th Cir. 2001), held:

> We thus conclude that prejudgment interest awards against WYO companies are
> direct charges on the public treasury forbidden by the no-interest rule and reverse
> the part of the judgment awarding such interest.

---

[6]  The Order in *Dere* is attached hereto as "Exhibit 5".

[7]  The Order in *Pierce* is attached hereto as "Exhibit 6".

[8] Please note that the Motion was Unopposed, but after review of the pleadings and consideration
by Judge Fox, the Motion to Quash the Jury Demand was Granted.

In conformity with the U.S. Third Circuit in *Van Holt v. Liberty Mutual Insurance Co.,* 163 F.3d 161 (3rd Cir. 1998)(on panel rehearing) and the U.S. Ninth Circuit in *Flick v. Liberty Mutual*, 205 F.3d 386 (9th Cir. 2000), *cert. denied,* 121 S.Ct. 305 (2000), the U.S. Eleventh Circuit confirmed that U.S. Treasury funds are at stake in flood claims under the NFIP.    The U.S. Fourth Circuit recently recognized these same principles in *Battle v. Seibels Bruce Ins. Co., et. al.*, 288 F.3d 596 (4th Cir. 2002).  Because U.S. Treasury funds are at stake, and because there is no express authorization by Congress in the NFIA, there is no right to a jury trial.

1.      **History and Structure of the National Flood Insurance Program**

Defendant believes that it is important for this Honorable Court to understand the background and statutory scheme of the National Flood Insurance Program in order to make an informed decision on the present motion. Therefore, Selective respectfully requests that the Court review the background of the NFIP as set forth in *Battle, supra* and Section I in *Flick v. Liberty Mutual,* 305 F.3d at 387-389; see also, *Newton, supra*.   For insight into the Federal Emergency Management Agency's ("FEMA") position as the regulatory and statutory scheme of the Flood Program, please see the *amicus curiae* brief submitted by FEMA in the *Van Holt* matter.[9]

---

[9]  *Van Holt amicus curiae* brief is attached as Exhibit 7.

2.    **Write-Your-Own Program Carriers are the "Functional Equivalent" of FEMA**

It is important to note that presently the NFIP is operated under Part B of the Plan, under

the Director of FEMA, and uses private insurance companies known as "Write-Your-Own" or

"WYO" carriers to issue the Standard Flood Insurance Policy[10]

("SFIP" or the "Flood Policy"), codified and found at 44 C.F.R. Part 61, App. A(1).  Prior to

1978, the NFIP was operated by the U.S. Dept. of Housing and Urban Development (HUD);

however, in 1978, the NFIP began to operate under Plan B (42 U.S.C. § 4071, *et seq.*), wherein

the Federal Insurance Administration took over the running of the Flood Program, and all of

HUD's responsibilities were turned over to the Director of FEMA.  In 1984, under Part B of the

Program, the Director of FEMA authorized the Flood Policy to be issued by private insurance

companies that agreed to participate as the "fiscal agents" of the United States.  In essence, a suit

---

[10]    Please note that there are three (3) versions of the SFIP – the Dwelling form (for homeowners) is found at 44 C.F.R., Part 61, App. A(1), [this is the version of the SFIP at issue]; the General Property form is found at 44 C.F.R., Part 61, App. A(2); and the Residential Condominium Building Association Policy ("RC BAP") is found at 44 C.F.R., Part 61, App. A(3).  (Note that the SFIP was revised in December of 2000, so it is very important that the Court review the correct version of the SFIP for the year at issue in this case.  Plaintiff's loss occurred on or about June 16, 2001, as a result of the remnants of  Tropical Storm Allison passing through the Pennsylvania area.  The Plaintiff's SFIP had a term commencing January 28, 2001 through January 28, 2002, so the Plaintiff had the "new" version of the SFIP in force, as found in the October 2001 edition of the C.F.R.).

against a WYO Carrier is the "functional equivalent" of a suit against FEMA. *Van Holt,* 163 F.3d at 166; see also *Neill v. State Farm Fire and Cas. Co.*, 159 F.Supp.2d 770 (E.D. Pa. 2000) and *Messa, et. al. v. Omaha Property and Casualty Insurance Company*, 122 F.Supp.2d 523 (D.N.J. 2000). Under the current system, all payment of claims under the SFIP, as well as the costs of defending a WYO Carrier, are paid for by funds held in the United States Treasury. *Van Holt,* 163 F.3d at 165; 44 C.F.R. § 62.23(i)(6); and 44 C.F.R. Pt. 62, App. A, Art. III.(D)(3). Selective is only the "fiscal agent" of the United States and, in reality, merely a vehicle for the U.S. Government to market and process flood insurance.

Selective receives a fee based on the total amount of the claim paid under the SFIP. 44 C.F.R. Pt. 62, App. A, Art. III.(C).  Selective also receives a similar fee based on the total amount spent in defending any lawsuits arising from a claim made pursuant to the SFIP (i.e., Defendant's attorneys fees are reimbursed by the federal government and Defendant is also paid a fee for handling the expenses incurred in defending the lawsuit). Thus, in reality, it is the funds of the United States Government held in the U.S. Treasury (not Selective's) which are at stake, and the WYO Carrier has every incentive to pay as much to the insured as can properly be paid, because the higher the claim payment the insured receives under the SFIP, the higher the fee the WYO Carrier receives for administering the claim!  See *Eddins v. Omega Insurance Company,* 825 F.Supp.752 (N.D. Miss., 1993).

The United States Government, in its *amicus curiae* brief submitted in *Van Holt* [11] took the view that the same rules which govern the policies issued directly by FEMA should apply

---

[11]  Exhibit 7.

with equal force as to the WYO Carrier side of the Flood Program.[12]  The grant of jurisdiction found in 42 U.S.C. §4072, (which the U.S. Third Circuit in *Van Holt* found to be controlling in cases involving WYO carriers such as Selective), constitutes a "limited waiver of the sovereign immunity of the United States" because it allows Courts to tax funds from the U.S. Treasury, and, therefore, it must be strictly construed.  See *Possessky v. NFIA*, 507 F.Supp. 913 (D.N.J. 1981) and the U.S. Fifth Circuit's ruling in *In Re: Estate of Lee v. NFIP*, 812 F.2d 253 (5th Cir. 1987).  In *Estate of Lee,* the U.S. Fifth Circuit noted the following:

> As a general rule, in suits against the sovereign, the United States is not liable for interest unless the liability is imposed by statute or assumed by contract.  *United States v. Worley*, 281 U.S. 339, 50 S.Ct. 291, 72 L.Ed. 887 (1930); *R & R Farm Enterprises, Inc. v. Federal Crop Ins. Corp.*, 788 F.2d 1148 (5th Cir. 1986). Because an award of interest against the government is a direct and costly charge on the public treasury, courts have a duty to carefully observe the express conditions defined by Congress before allowing such awards.  *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); R & R Farm, 788 F.2d at 1153-54.  Although Part B provides a **limited waiver of sovereign immunity** that permits a claimant to sue the Director of FEMA in federal district court, 42 U.S.C. § 4072, it does not provide for awards of prejudgment interest in favor of prevailing plaintiffs.  The Act's limited waiver of sovereign immunity from suit cannot be construed as an express direction from Congress permitting interest awards on flood insurance claims.  See *R & R Farms*, 788 F.2d at 1152-54 (Federal Crop Insurance Act's waiver of immunity to "sue and be sued" does not authorize interest awards on crop insurance claims). (Emphasis added by Selective).

*Estate of Lee, supra* at 256.  Thus, as noted before, there is no right or mechanism in the controlling federal statutes that allows for a jury trial in the instant matter.  Please note that while the *Estate of Lee* decision concerned a lawsuit directly against FEMA instead of a WYO Carrier, the principles established for the Program in that case should be applied uniformly because U.S.

---

[12] *Id.* , pp. 14-15.  Furthermore, the U.S. Third Circuit Court of Appeal recognized this principle in the *Van Holt* decision. 163 F.3d 161 (3rd Cir. 1998) (on panel rehearing).

Treasury funds are at stake whether it is FEMA or a WYO Carrier that is sued.  Other courts have recognized and applied this reasoning as will be shown in the discussion below.

3.    **No Special Rules Regardless Of The Entity That Issued The SFIP.**

It is Selective's contention that no jury trials are permissible in lawsuits against a WYO carrier arising out of the operation and administration of the NFIP.  Selective relies on the *Sandia Oil, Kolner, Latz,* and *Yonker* decisions to support this position, as well as the recent Orders in *Guerra, Chaviano*, *Nutt*, *Dere*, *Jones* and *Pierce*.  An insured under an SFIP should not have greater rights or benefits than another insured based solely upon whether it was a FEMA direct-issued SFIP or a WYO Carrier issued SFIP, because ultimately, it is U.S. Treasury funds at stake.  Other Courts have noted that there should be no difference in remedies or rights afforded to insureds under SFIPs as discussed below.

A.  **The "No Interest Rule" and WYO Carriers.**

The U.S. Eleventh Circuit in *Newton v. Capital Assurance Corporation, supra,* discussed the applicability of sovereign immunity principles and the "no interest" rule in a case in which an SFIP was issued to the insured by a WYO Carrier instead of  FEMA.

In *Newton*, *supra*, the district court initially awarded prejudgment interest to the plaintiffs based upon the *West v. Harris* [13] decision. The *West* Court awarded prejudgment interest to the insured under the SFIP.  However, when *West* was decided, the Flood Program was operating under Part A.  As noted by the U.S. Eleventh Circuit in *Newton*, the Flood Program currently operates under Part B, and *West* is no longer controlling on that aspect of the law.[14]

---

[13] 573 F.2d 873 (5th Cir.1978), *cert. denied* 440 U.S. 946 (1979).

[14]   The issue of interest in matters involving NFIP claims is currently controlled by *In re. Estate of Lee v. National Flood Insurance Program*, 812 F.2d 253 (5th Cir. 1987).

In *Newton*, plaintiffs argued that prejudgment interest was properly awarded and cited to several provisions of the Arrangement between FEMA and the WYO Program Carriers. The defendant countered with the argument (and was supported in its position by an *amicus curiae* brief[15] from the United States) that ultimately U.S. Treasury funds would be paid out, that the "no interest" rule prohibited such awards, and that there was no provision in federal law which waived the limitations for recovery of U.S. Treasury funds. In addressing the arguments of the plaintiffs in *Newton*, *supra* at 1312, the U.S. Eleventh Circuit stated the following:

> But the reality lying behind these observations robs them of their strength. A WYO Company may write a policy in its name, but FEMA dictates the terms. And preliminary responsibility is a mirage when the federal government, through FEMA, will always foot the full bill in the end. Giving these factors controlling weight would elevate the form of the insurance system over its substance. We thus conclude that prejudgment interest awards against WYO companies are direct charges on the public treasury forbidden by the no-interest rule and reverse on the part of the judgment awarding such interest.

Thus, *Newton* establishes that the rules and limitations for recovery of U.S. Treasury funds are equally applicable as to matters involving WYO Program Carriers (such as Selective) and FEMA, because ultimately, it is U.S. Treasury funds at stake.

### B.    Case Law Regarding Standard Flood Insurance Policies Issued Directly by FEMA[16] Involving Demand for Trial By Jury

The foundation for the current position being advanced by Selective begins with the Seventh Amendment of the United States Constitution, which provides that "[I]n suits at common-law, where the value in controversy shall exceed twenty dollars, the right to a trial by jury shall be preserved." Rule 38 of the Federal Rules of Civil Procedure allows a party to

---

[15]  Exhibit 7.

[16]  "Direct Side" SFIPs are those policies issued directly by FEMA. Approximately, 10% of all flood policies are issued by FEMA. Accordingly, 90% are issued by WYO Program Carriers.

demand a jury trial as to "issues triable of right by a jury."  However, it is well established that

the Seventh Amendment right to a jury trial does not apply in actions to recovery U.S. Treasury

funds.  *Lehman v. Nakshia,* 453 U.S. 156, 160 (1981).  A plaintiff in such an action has a right to

a trial by jury only where Congress has affirmatively and unambiguously granted that right by

statute.  *Id.*  As will be illustrated by the following discussion, there is no discernable basis for a

jury trial in matters arising out of the administration of the NFIP.  Nowhere did Congress provide

for a jury trial, even in a trial involving a WYO Program Carrier.

In *Latz*, 562 F.Supp. at 692 (an NFIP case), the Court stated that "Any waiver of

sovereign immunity must be strictly construed", and cited to the prior ruling in the same case for

support (see  *Latz v. Gallagher,* 550 F.Supp. 257 at 258, (W. D. Mich. 1982), which in turn cited

to *Lehman v. Nakshian,* 453 U.S. 156 (1981)).  Further, the Court denied the plaintiff's jury

demand, and concluded that:

> The waiver of sovereign immunity included in the National Flood Insurance Act,
> 42 U.S.C. § 4001-4128, must be strictly construed.  *Latz v. Gallagher,* 550
> F.Supp. 257 (1982).  The Court is of the opinion that a strict construction of
> §4072 of the Act **precludes even an advisory jury** as to the federal defendant.

*Latz,* 562 F.Supp. at 693 (emphasis added).

In *Kolner,* 547 F.Supp. at 830 the Court stated the following:

> Under the present Part B framework, however, the Federal Government's
> participation is greatly increased.  While the exact extent of the role played by
> private insurers under Part B is unclear, it seems that the Federal Government has
> assumed most of the responsibility for the operation of the program.  A suit
> against the director of FEMA is therefore a suit against the Federal Government.
> In *Possessky v. NFIA,* 507 F.Supp 913 (D.N.J. 1981) the Court, in interpreting
> part B's jurisdictional provision to permit exclusive federal jurisdiction stated:
>
> > "The suit against the Director of FEMA under Section 4072 is
> > subject to the **limited waiver** of sovereign immunity.  The
> > plaintiffs are challenging the federal agency's final action denying
> > their claim for benefits under an exclusively federal program.  If

the plaintiffs are successful, the judgment is paid from the public funds of the United States, which is the hallmark of sovereign immunity." *Id.* at 915 (emphasis added).

Thus, this Court holds that, because the case at bar is a suit against the Federal Government, **the Seventh Amendment right to a trial by jury does not apply**. *Lehman v. Nakshian,* 453 U.S. at 160, 101 S.Ct. at 2701. **Inasmuch as Congress has not granted an entitlement to a jury trial under 42 U.S.C. § 4072 or any other provision, the plaintiffs in this case have no such right**. This Court thus amends its earlier order and strikes plaintiffs' jury demand. (emphasis added).

In *Yonker,* 581 F.Supp. at 1245-1246 the Court also denied the plaintiff's demand for a jury trial,

and stated:

> **Inasmuch as 42 U.S.C. § 4072 does not "affirmatively and unambiguously" grant the Plaintiffs a right to a jury trial, the Court finds that the sovereign immunity of the United States precludes a jury trial in this action.** See *Kolner v. Director, FEMA,* 547 F.Supp. 828 (N.D. Ill. 1982), applying *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). Accord, *Latz v. Gallagher,* 550 F.Supp. 257 (W.D.Mich. 1982). Accordingly, the Court hereby grants the Director's motion to strike the Plaintiffs' demand for a jury trial, pursuant to Rule 39(a)(2), Federal Rules of Civil Procedure, filed August 19, 1983. (emphasis added).

In *Sandia Oil,* 889 F.2d at 262, the Court stated "[s]ection 4072's waiver of immunity has been

strictly construed not to allow a jury trial against the government."

The courts in *Sandia Oil, Kolner, Latz*, and *Yonker* all followed the same logic – the

Flood Program is currently being operated under Plan B, and at no discernable point in any of the

federal statutes and laws governing the National Flood Insurance Act or the National Flood

Insurance Program did the United States Government authorize a jury trial. Thus, 42 U.S.C.

§4072 (i.e. - the consent by Congress to allow lawsuits to recover U.S. Treasury funds) must be

strictly construed. The rules and regulations considered by the foregoing courts are the same

rules and regulations involved in the present matter. See the U.S. Third Circuit's ruling in *Van

Holt v. Liberty Mutual Ins. Co.,* 163 F.3d 161 (3rd Cir. 1998) (on panel rehearing) wherein that

Court held that 42 U.S.C. § 4072 applied to WYO Carriers. Courts have repeatedly recognized the importance that in the context of this federal program, one insured should not receive different treatment or rights than another insured depending on whether the Standard Flood Insurance Policy received was issued directly by FEMA or was issued by a WYO Carrier, as it would destroy the uniformity of decision needed for administration of the Flood Program. *Neill, supra. Messa, supra. Van Holt, supra.* Therefore, Selective respectfully presents this argument to the Court that a jury trial is not permitted in the case at hand based upon strict construction of the controlling federal laws, rules and regulations. The reason why FEMA's regulations, federal law and the Flood Policy's provisions <u>must</u> be "strictly construed and enforced," is constitutional. Please recall that all payments are a "direct charge on the public treasury." *Gowland,* 143 F.3d at 955. Because of this, the Appropriations Clause of the U.S. Constitution, as well as the separation of powers doctrine, come into play. In *Flick*, *Gowland*, and in *Forman v. FEMA*, 138 F.3d 543 (5th Cir. 1998), it was established that all analysis of NFIP cases must flow from an understanding of the relevance of the Appropriations Clause of the U.S. Constitution.

An understanding of the NFIA and the Appropriations Clause is important as it relates to the case at bar. Defendant relies upon the Supreme Court's holdings in *Federal Crop Ins. Corp. v. Merrill*, 68 S.Ct. 1(1947)(*"Merrill"*) and *Office of Personnel Management v. Richmond*, 110 S.Ct. 2465 (1990)(*"Richmond"*) to support this position. Defendant notes that the following passages from those cases are directly relevant to the case at bar. In *Richmond,* the U.S. Supreme Court analyzed the constitutional underpinnings of the *Merrill* doctrine, as follows:

> We hold that payments of money from the Federal Treasury are limited to those authorized by statute, .... 110 S.Ct. at 2465.

                              *    *    *

Our cases underscore the straight forward and explicit command of the
Appropriations Clause.  "It means simply that no money can be paid out of the
Treasury unless is has been appropriated by an act of Congress."  *Id.* at 2471.

                              *    *    *

The command of the Clause is not limited to the relief available in a judicial
proceeding seeking payment of public funds.  Any exercise of a power granted by
the Constitution to one of the other branches of government is limited by a valid
reservation of Congressional funds in the Treasury.  *Id.* at 2472.

Please note that Congress underwrites <u>all</u> operations of the NFIP, including claims

adjustment, through the U.S. Treasury.[17] Congress has conferred "rule-making power upon the

agency created for carrying out its policy" to FEMA.[18] Congress statutorily authorized FEMA to

enter into "Arrangements" with private insurance companies, who operate with a federal

checkbook as the "fiscal agent" of the United States.[19] Under the "Arrangement" with the WYO

carriers established by FEMA with the  authorization of Congress, all payments under a NFIP

"claim" are "binding" upon the FIA.[20] This includes defense costs.[21]  The extent of the

discretion given to the WYO Program Carriers is to insert their name in place of FEMA's on the

SFIP.[22] Otherwise, no part, provision, or requirement of the SFIP may be waived, altered, or

amended by the WYO Program Carrier.  Only the Federal Insurance Administrator may make

such a waiver. See 44 C.F.R. §61.13(d) and 44 C.F.R. Pt. 61, App. A(1), Article VII(D)(SFIP).

Thus, when this statutory and regulatory scheme is viewed in light of the Appropriations

Clause holdings of the Supreme Court, it is clear why the rules, regulations, and 42 U.S.C. §

---

[17] 42 U.S.C. § 4017(d)(1).

[18] 42 U.S.C. §§ 4013, 4017, 4019.

[19] 42 U.S.C. § 4071(a)(1).

[20] 44 C.F.R. Pt. 62.23(i)(l) and (6), and App. A, Art. IIF. and Art. IIIC.

[21] 44 C.F.R. Pt. 62.23(i)(6) and (9).

[22] 44 C.F.R. § 61.13(f).

4072 must be strictly construed and uniformly applied to all of the insureds participating in the Flood Program.

### C.    Suing a WYO Carrier Is Equivalent to Suing FEMA, And No Juries Are Allowed.

The basis for extending the principles discussed herein to cases involving WYO Program Carriers is premised upon the discussions above that the WYO carrier is the "fiscal agent" of the United States, the "functional equivalent" of FEMA, and that claims are paid out of the U.S. Treasury. The U.S. Third Circuit clearly set forth these elements in the *Van Holt* rehearing, 163 F.3d at 166-67:

> [4] As the United States argues, § 4072 provides subject-matter jurisdiction for an insured's suits against a WYO arising out of a disputed flood insurance claim though the plain text appears to restrict the reach of § 4072 to suits against FEMA. **For several reasons, a suit against a WYO company is the functional equivalent of a suit against FEMA.** First, a WYO company is a fiscal agent of the United States. 42 U.S.C. § 4071(a)(1). Second, FEMA regulations require a WYO company to defend claims but assure that FEMA will reimburse the WYO for defense costs. 44 C.F.R. § 62.23(i)(6). Third, an insured's flood insurance claims are ultimately paid by FEMA. After a WYO company depletes its net premium income, FEMA reimburses the company for the company's claims payments. 44 C.F.R. Pt. 62, App. A, Art. IV(A). When a WYO company's proceeds from insurance premiums exceeds its current expenditures, it must pay the excess proceeds to the FIA. 44 C.F.R. Pt. 62, App. A, Art. VII(B). Although a WYO company collects premiums and disburses claims, only FEMA bears the risk under the flood insurance program. **Thus, a lawsuit against a WYO company is, in reality, a suit against FEMA**. Cf. *Gowland*, 143 F.3d at 954-55 (refusing to estop WYO company due to relationship between company and FEMA). (emphasis added).

This same line of logic (that ultimately U.S. Treasury funds are at stake) is found in the U.S. Fourth Circuit's ruling in *Battle*, *supra*, 288 F.3d 596 at 599-600. Given this discussion, and applying it to a jury demand against a WYO Program Carrier, it should be analyzed in the same light as a direct suit against FEMA.

In observing its duty of candor with the Court, Selective points out that the *Sandia Oil, Kolner, Latz* and *Yonker* decisions all concerned cases involving FEMA as the named defendant, not a WYO carrier. Analytically, however, as recognized by the Court in the *Nutt* decision, this should make no discernable difference for the Court in ruling on this motion, as the WYO carrier is the "functional equivalent" of FEMA. *Van Holt, supra.* In fact, Chief Judge Vinson relied upon this truism in his ruling in *Nutt*, at *5, by stating the following:

> Thus, because an action against a WYO Carrier is an action against FEMA, and because there is no right to trial by jury in an action against FEMA, plaintiff is not entitled to trial by jury in this case against the WYO insurer..

Additionally please note that the *sua sponte* decision in *Dere* was also a suit against a WYO carrier, not FEMA, and was based upon the *Latz* case relied upon herein.

On February 25, 2002, Chief Judge Zloch of the Southern District of Florida in the *Jones* case concluded that the plaintiff was not entitled to a jury trial against a WYO Program Carrier recognizing that the principles discussed herein are applicable. (Ex. 3). The *Jones* ruling is important because it is the first time the Court analyzed the jury trial issue *after* the U.S. Eleventh Circuit's rehearing decision in *Newton*.

On April 9, 2002, Judge Moreno of Southern District of Florida rendered an order granting Defendant's motion to quash jury demand in *Chaviano*.[23] The Court held:

> Plaintiff's claims implicate funds of the United States Treasury administered by Defendant under the National Flood Insurance Program, 42 U.S.C. §§ 4071-4072. Plaintiff's claims are therefore charges on the public treasury, amounting to a suit against the federal government itself. *Newton v. Capital Assurance Corp.*, 245 F.3d 1306, 1312 (11th Cir. 2001). A plaintiff bringing suit against the federal government has a right to trial by jury only where Congress has "affirmatively and unambiguously" granted the right by statute. *Lehman v. Nakshia*, 453 U.S. 156, 160 (1981). Congress has not done so here. Therefore, Plaintiff is not entitled to a jury trial. (citations omitted) (Exhibit 2).

---

[23] Exhibit 2.

-18-

The case at bar implicates the funds of the U.S. Treasury exactly as in *Chaviano*. Therefore, Plaintiff herein is likewise precluded from a trial by jury in the instant matter.

Further, on August 21, 2002, Judge Graham of the Southern District of Florida granted Defendant's Motion to Quash Jury Demand in *Guerra*[24] holding that 42 U.S.C. §4072 does not affirmatively and unambiguously grant the parties a right to a jury trial.

As noted by the U.S. Eleventh Circuit in *Newton,* the conditions for recovery of U.S. Treasury funds apply even where the issuer of the Standard Flood Insurance Policy is a WYO Program Carrier and not FEMA directly. It would be logically inconsistent if certain principles applied in one case where FEMA is involved and not in another case when a WYO Program Carrier because, regardless of who is sued, it is U.S. Treasury funds at stake. No jury trials are permitted as to FEMA, and this principle should also apply when the U.S. Government's fiscal agent is the nominal defendant because it is still U.S. Treasury funds at stake. Stated differently, how can principles be applied equally to prohibit awards of interest (i.e. - how much U.S. Treasury funds are at issue) when a WYO Program Carrier is involved, but then those same principles not be applicable when it comes to a jury demand (i.e. - who decides how much U.S. Treasury funds should be paid?) The bottom line is that it is still U.S. Treasury funds at stake and there is no mechanism allowing for a jury. The analysis of Chief Judge Vinson's ruling in *Nutt* reveals the following:

> Recently, the Ninth Circuit determined in an action brought against a WYO insurer, that "regardless of whether FEMA or a WYO company issues a flood insurance policy, funds from the Treasury of the United States pay off the insureds' claims," and, therefore, the Appropriations Clause applies. *Flick v. Liberty Mutual Fire Ins. Co.,* ___ F.3d ___, 2000 WL 155899 (9th Cir., Feb. 15, 2000)[*sic*]. Thus, "[b]ecause flood losses, whether insured by FEMA or by a

---

[24] Exhibit 1 at *6-7.

participating WYO insurer, are paid out of the National Flood Insurance Fund, a claimant under a standard flood insurance policy must comply strictly with the terms and conditions that Congress has established for payment." *Id.,* at *7 (citing U.S. Const. article I, section 9, clause 7 (stating that funds may be drawn from the Treasury only by act of law.) Therefore, in this case, because plaintiff is suing to collect federal Treasury funds, and there is no statute explicitly conferring a right to jury trial, the presumption must be that the plaintiff is not entitled to trial by jury.[25]

For the reasons set forth in the *Sandia Oil, Kolner, Latz* and *Yonker* decisions, and integrated into the analysis of the statutory scheme of the NFIP, as in *Nutt, Dere*, *Jones*, *Chaviano, Guerra* and *Pierce*, the instant jury demand against Selective, a WYO Program Carrier, should be quashed.

### D.    Cases Discussing That There Are No Special Rules For WYO Carriers.

In lawsuits regarding SFIP claims handling matters under the NFIP, courts across the country have analyzed the issue of whether a SFIP issued by a WYO Program Carrier should be treated any differently than a SFIP issued by FEMA directly. The U.S. Ninth Circuit in *Flick,* 205 F.3d at 396 stated the following:

We also avoid the inconsistent result that would occur were we to treat standard flood insurance policies differently depending on whether they are written by WYO insurers or FEMA. [FN14]

FN14. As discussed in the text, there is a compelling government interest in assuring uniformity of decision in cases involving the NFIP. *See Brazil,* 763 F.2d at 1075. We note that the disposition suggested by the dissent would lead to the anomalous result that standard flood insurance policies written by WYO insurers would be subject to **special rules**, such as the rule of notice prejudice or substantial compliance, while standard flood insurance policies written by FEMA would not. *See Seattle Fur Exchange v. FCIA,* 7 F.3d 158, 163 (9th Cir.1993) (applying the rule of strict compliance to an insurance policy issued, in part, by the federal government). Such a result would provide greater coverage at the same price to policyholders who purchase insurance through the

---

[25] Please note that the citation to the *Flick* decision is taken verbatim from Chief Judge Vinson's ruling. The full citation for that case is *Flick v. Liberty Mutual Insurance Company,* 205 F.3d 386 (9th Cir. 2000), *cert. denied*, 121 S.Ct. 305 (2000).

WYO program and conflict with FEMA's goal that flood insurance policies be "standard." *See* 44 C.F.R. §§ 61.4(b), 61.13(d), 62.23(c), 62.23(d) (providing that the terms and conditions of flood insurance policies shall be fixed by FEMA and issued without alteration); 48 Fed.Reg. 46789 (1983) (stating that coverage under the WYO program is to be identical in scope and in price to coverage provided by FEMA). (emphasis added)

In addition, in *Scherz v. South Carolina Insurance Co.*, 112 F.Supp.2d 1000, 1009 (C.D.Cal. 2000), the court held that to permit recovery for alleged claims mishandling against an SFIP issued by a WYO Program Carrier, but not against a SFIP issued directly from FEMA, "would create an internal inconsistency within an otherwise balanced statutory and regulatory structure."

The reason not to create special rules for SFIPs issued by WYO Program Carriers is clear. First, the statutory scheme of the NFIP stresses uniformity. As noted in *Flick*, it is "FEMA's goal that flood insurance policies be "standard." *See* 44 C.F.R. §§ 61.4(b), 61.13(d), 62.23(c), 62.23(d)." 205 F.3d at 396. Second, the insured should have the same and remedies coverage regardless of the source of issue of the SFIP. Again, as held in *Flick,* 205 F.3d at 396, and followed in *Scherz*, if special rules were allowed, an insured with a policy from a WYO Program Carrier would have greater coverage at the same price as an insured who purchased a policy directly from FEMA. Third, U.S. Treasury funds are ultimately at stake regardless of the issuer of the SFIP. See *Flick, supra; Van Holt, supra; Gowland supra*.

It is clear that FEMA intended to have a uniform National Flood Insurance Program. It would be an anomaly for the Court to be able to decide if coverage was afforded under the SFIP, and then allow a jury to decide whether or not federal standards for adjusting the claim were violated (or an even larger anomaly would be to allow state law based claims to proceed at all, given that all claims arising out of claims handling in this case are claims "under" the SFIP as

-21-

per the U.S. Fourth Circuit's ruling in *Battle, supra,* (including FN18, citing to FEMA's "final rule")).

In closing, please note that the stakes are enormous – currently over ***$400 billion*** worth of federal flood insurance is in force, spread over four million policies. Without "uniformity,"[26] the viability of such an enormous federal program is at *best* questionable.[27] As was noted by the U.S. Ninth Circuit in *Flick,* there is a "compelling interest" in assuring uniformity of decision in cases involving the NFIP.[28] Therefore, it is imperative that there be no <u>special rules</u> for SFIPs issued by WYO Program Carriers.

**E.    No Jury is Necessary if Defendant's Rule 12(b)(6) Motion is GRANTED.**

Concurrently submitted with the instant Motion to Quash is the Defendant's Motion to Dismiss the state-law-based extra-contractual claims of the Plaintiff. If that Motion is granted, the only remaining claims of the Plaintiff would be for the alleged breach of the contract. Please recall that interpretation of federal regulations and contracts (and the SFIP is both a federal regulation <u>and</u> a contract) is a matter of law solely for the Court to decide. In other words, if the only thing remaining is a claim for benefits under the SFIP, there is nothing for a jury to decide.

---

[26] See *West v. Harris*, 573 F.2d 873 at 881 (5th Cir. 1978), *cert. denied*, 440 U.S. 946 (1979), wherein the U.S. Fifth Circuit discusses the importance of uniformity of decision in matters concerning this federal program.

[27] Note that Congress has already declared that "[A]vailability of funds [is] dependent on future appropriation acts." 42 U.S.C. §4017(f).

[28] *Flick*, 205 F.3d at 390.

Even if the Court disagrees with the arguments presented herein, if the Rule 12(b)(6) Motion is granted, the Plaintiff's jury demand should still be denied.

## CONCLUSION

The United States Government, via FEMA, contracted with the WYO Program Carriers to administer the Flood Program and the claims made under the SFIPs. The federal government pays for all costs of the trial and damages awarded by courts (if any are awarded) with U.S. Treasury funds. The WYO Program Carrier does not have its funds at stake. The U.S. Fifth Circuit has discussed the importance of uniformity of decision in matters involving this federal program in the *West* case. The need for uniformity stems from the fact that it is U.S. Treasury funds at stake in such matters.

The jurisdictional statute issue, which constitutes a "limited waiver of the sovereign immunity of the United States"[29] so as to allow for recovery of U.S. Treasury funds, is still 42 U.S.C. §4072.  The National Flood Insurance Act is the federal law at issue, 42 U.S.C. § 4001, *et seq.*  The funds at issue are still United States Treasury funds, not Selective's. The United States Government has not authorized a jury trial in any of the statutes governing and controlling the National Flood Insurance Program, even as to the WYO insurance companies participating in the Flood Program.  The jurisdictional statute (42 U.S.C. §4072) must be strictly construed, so as to protect the public fisc at stake in the case at bar.

---

[29] See *Possessky, supra* and *In Re: Estate of Lee, supra.*

WHEREFORE, Defendant, Selective Insurance Company, Inc., respectfully requests that this Honorable Court will issue an Order quashing the Plaintiff's jury demand.

Respectfully submitted,

_____

DANIEL KREBBS
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
1845 Walnut St., 21st Fl.
Philadelphia, Pennsylvania 19103
Telephone: 215-575-2793
Local Counsel for Defendant,
Selective Insurance Company, Inc.

NIELSEN LAW FIRM, LLC
Gerald J. Nielsen    La.S.B. # 17078
Attorney-in-Charge
The Pelican Building
2121 Airline Drive, Suite 200
Metairie, Louisiana 70001
(504) 837-2500
(504) 832-9165 FAX
Of Counsel

Date:
\01_21\LIAB\DDK\LLPG\366161\KSZ\15036\00113

## **CERTIFICATE**

I hereby certify that a copy of the above and foregoing pleading has been served on Plaintiff's counsel, Patrick G. Murphy, Esq., Kelley and Murphy, Union Meeting Corporate Center V, 925 Harvest Drive, Suite 160, Blue Bell, Pennsylvania 19422.

_____
DANIEL D. KREBBS, ESQUIRE

Done, this ____ day of November, 2002
\01_21\LIAB\DDK\LLPG\366161\KSZ\15036\00113