UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

—————————————————————
                                            :
MARIA DEVERANT                              :
1036 Limekiln Pike                          :      CIVIL ACTION NO. 02-CV-3801
Maple Glen, Pennsylvania 19002              :
                                            :
            Plaintiff,                      :
                                            :
      versus                                :
                                            :
SELECTIVE INSURANCE COMPANY                 :
INC.                                        :
40 Wantage Avenue                           :
Branchville, New Jersey 07890               :
                                            :
            Defendant.                      :
—————————————————————       :


## MOTION FOR SUMMARY JUDGMENT


NOW INTO COURT, through undersigned counsel, comes Defendant, Selective

Insurance Company of America ("Selective"), appearing herein in its "fiduciary capacity"[1] as the

"fiscal agent of the United States,"[2] and at the expense of the U.S. Treasury,[3] which respectfully

moves this Honorable Court for a judgment pursuant to Fed.R.Civ.P. 56, dismissing this case in

its entirety and in advance of trial on the merits.

1.      This matter is a flood insurance breach of contract action brought pursuant to the

operation of the U.S. Government's National Flood Insurance Program ("NFIP" or "Flood

Program").  However, given the failure of the Plaintiff to comply with the conditions precedent

---

[1] 44 C.F.R. Part 62.23(f).

[2] *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998).

[3] *Van Holt v. Liberty Mutual*, 163 F.3d 161, 165 (3rd Cir. 1998) (on panel rehearing).

for payment of U.S. Treasury funds under the NFIP's Standard Flood Insurance Policy ("SFIP") by failing to timely submit a signed and sworn Proof of Loss pursuant to Article VII(J)(4) of the SFIP, these claims cannot be paid.

2.      Further, even if the Plaintiff had timely submitted a Proof of Loss, Plaintiff's various claims for personal property contents items as well as building items located in the basement are not afforded coverage under Article III(A)(8).

3.      Also, Plaintiff's claim for items located on the first floor is not afforded coverage as the damages to these items are not caused directly by or from flood.

4.      Likewise, plaintiff's claims for loss of access to the insured property and additional living expenses are not covered by Articles V(A)(2) and V(A)(5), respectively.

5.      Furthermore, plaintiff's claim for property damage caused by soil erosion due to flood is not covered by Article V(C).

6.      Plaintiff has not presented any evidence meeting the requirements of the narrow exception found in Article V(C)(6).

7.      Finally, Plaintiff's claim for damage to landscaping including, but not limited to trees, shrubs, and plants is not covered by Article IV(6) of the SFIP.

8.      Therefore, and as will be explained in greater detail in the attached Memorandum of Law, Selective contends that the Plaintiff's claims are not payable and a trial on the merits is not necessary.

WHEREFORE, defendant Selective respectfully requests of this Honorable Court a judgment summarily dismissing the Plaintiff's case at this time, with prejudice, and at her cost, and without any additional expense to the U.S. Treasury.

Respectfully submitted,

_____
DANIEL KREBBS
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
1845 Walnut St., 21st Fl.
Philadelphia, Pennsylvania 19103
Telephone: 215-575-2793
Local Counsel for Defendant,
Selective Insurance Company, Inc.


NIELSEN LAW FIRM, LLC
Gerald J. Nielsen  La.S.B. # 17078
Attorney-in-Charge
The Pelican Building
2121 Airline Drive, Suite 200
Metairie, Louisiana 70001
(504) 837-2500
(504) 832-9165 FAX
Of Counsel

Dated:  November _____, 2002.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing pleading has been served on Plaintiff's counsel, Patrick G. Murphy, Esq., Kelley and Murphy, Union Meeting Corporate Center V, 925 Harvest Drive, Suite 160, Blue Bell, Pennsylvania 19422.

_____

DANIEL D. KREBBS, ESQUIRE

Done, this ____ day of November, 2002

\01_21\LIAB\DDK\LLPG\366157\KSZ\15036\00113

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                            :
MARIA DEVERANT                              :
1036 Limekiln Pike                          :        CIVIL ACTION NO. 02-CV-3801
Maple Glen, Pennsylvania 19002              :
                                            :
            Plaintiff,                      :
                                            :
      versus                                :
                                            :
SELECTIVE INSURANCE COMPANY                 :
INC.                                        :
40 Wantage Avenue                           :
Branchville, New Jersey 07890               :
                                            :
            Defendant.                      :
_____           :

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

Defendant, Selective Insurance Company, Inc. ("Selective"), appearing herein in its "fiduciary"[1] capacity as the "fiscal agent of the United States"[2] and at the expense of the U.S. Treasury,[3] which respectfully submits this Memorandum in Support of its Motion For Summary Judgment.  As a basis for this motion, Selective will show this Honorable Court that the claim for U.S. Treasury funds for flood loss damages submitted by the Plaintiff cannot be paid by Selective.  First, Plaintiff failed to timely submit a signed and sworn Proof of Loss for damages arising out of the flooding incident of June 16, 2001, as required under the terms of her Standard Flood Insurance Policy ("SFIP").  Second, Plaintiff's claims for damages for personal property

_____

[1] 44 C.F.R. Pt. 62.23(f).

[2] *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998).

[3] *Van Holt v. Liberty Mutual Ins. Co.,* 163 F.3d 161 (3rd Cir. 1998)(on panel rehearing).

contents items as well as building items located in the basement are not covered under Article III(A)(8) of the SFIP.   Third, Plaintiff's claims for items located on the first floor are not afforded coverage, as the damages to these items are not caused directly by or from the flood. Fourth, Plaintiff's claims for loss of access to the insured property and additional living expenses are not afforded coverage under Articles V(A)(2) and V(A)(5), respectively.   Fifth, Plaintiff's claim that her property was damaged as a result of soil erosion is not covered under Article V(C). Sixth, Plaintiff's claim for damage to landscaping including, but not limited to trees, shrubs, and plants is not covered under Article IV(6) of the SFIP.   Accordingly, Selective moves for judgment dismissing all aspects of this case.

## FACTS

Plaintiff, Maria Deverant, is the owner of a two-story (plus four-foot basement) house located at 1036 Limekiln Pike in Maple Glen, Pennsylvania.  (Ex. 1 and Complaint, ¶1).   On June 16, 2001, Plaintiff's property sustained damage as a result of a flood produced by Tropical Storm Allison.  (See Complaint, ¶8).  On or about June 19, 2001, Plaintiff submitted a Property Loss Notice that described Plaintiff's loss as "Damage to basement and foundation cracking. Hot water heater damaged and section of rock driveway is gone." (Ex. 2).  Upon receipt of the Property Loss Notice, Selective contacted Insurance Network Services, which, in turn, assigned David S. Fleser, an independent adjuster, to assist the insured in presenting her flood loss claim.[1] (Ex. 3, Affidavit of Deborah Gangemi).   On that same date, Selective forwarded a letter to Plaintiff advising that the matter was being referred to Insurance Network Services ("INS") for adjusting purposes and informing Plaintiff of the 60-day Proof of Loss requirement.  (Ex. 4) On

---

[1] These actions were taken in compliance with FEMA's 42 U.S.C. §4019 claims handling procedures.

or about June 27, 2001, David S. Fleser, an independent adjuster, inspected the property and found that some water had intruded the home.[2] (Ex. 5)  On or about August 1, 2001, Ron Plakus, an inspector with the US Small Business Administration, inspected the property and provided an estimate of damages in an amount of $30,821.00.  (Ex. 6).  On the Verification of Real Property form completed by the Plaintiff for the U.S. Small Business Administration, Plaintiff noted that Tropical Storm Allison caused the following damage: landscaping, soil erosion, fence, driveway, foundation, basement, exterior and interior walls, floors, fixtures, basement, plumbing and carpet.  (Ex. 7)

On August 10, 2001, Joseph T. Kelley, Plaintiff's counsel, wrote to INS to explain Plaintiff's contention that her property sustained damages in excess of $30,000.00. (Ex. 8). Notably, Mr. Kelley included a list of personal property, several estimates for repairs to the basement, cleaning the basement, and the replacement of the well pump and sump pump.  (Ex. 9).  On or about September 18, 2001, Mr. Kelley forwarded to Mr. Ed Horne of INS a Proof of Loss signed by Plaintiff on September 17, 2001, but listing the amount of the claim as "to be determined by agreement or appraisal."  (Ex. 10).  Also, on this date, Kevin Kennedy, a public adjuster with Insurance Adjuster Bureau, Inc., forwarded a letter to Mr. Horne enclosing a Building Item estimate prepared by I.L. Kone, Inc.  (Ex. 11)  On or about September 24, 2001, Mr. Horne wrote to Mr. Kelley advising that the Proof of Loss submitted was incomplete.   (Ex. 12).  Also, on this date, Mr. Horne forwarded a letter to Selective advising that INS was unable

---

[2]  As will be explained further in this fact section, because there was a question as to the depth of the water level in the Plaintiff's home, a second re-inspection was necessary to confirm that the water level did not reach the first floor, as David Fleser, first adjuster, recorded the water depth as told to him by the Plaintiff.  This re-inspection was conducted by Michael Galante on November 13, 2001.

to determine that water rose anywhere close to the ceiling of the basement as the photos depict that the electricity was still on at the time of the inspection.  (Ex. 13)

On or about October 10, 2001, Mr. Horne wrote to the public adjuster to advise that the NFIP operates pursuant to the provisions of the SFIP and said provisions required that a Proof of Loss be filed within 60 days and actually contain an amount of the alleged loss.  (Ex. 14)  On or about October 15, 2001, the public adjuster faxed a letter to Mr. Horne to object to, and request clarification and authority for, the reservation of rights contained in the October 10, 2001 letter. (Ex. 15)  On or about October 24, 2001, Mr. Horne forwarded a letter to Michael Gallante, an independent adjuster, requesting that he re-inspect the property, as there was a question as to the depth of the water inside the house.  (Ex. 16)  On or about November 13, 2001, Mr. Galante, re-inspected [3] the property and found that there was no evidence of water reaching the first floor or that the water was flowing through the windows or roof; the electricity was working; photos provided by the public adjuster showed a wet second and third stair tread leading from the basement - but a dry fourth stair tread with a wet foot print left by someone walking up the stairs from the basement floor; although the public adjuster's photos show wet carpet and wet vinyl flooring, the insulation behind the paneling was not wet and did not show any water mark.  (Ex. 17).

On or about December 17, 2001, Mr. Horne forwarded a letter to Selective advising of Mr. Galante's findings.  (Ex. 18).  Based on the findings of Mr. Galante, on or about February 7, 2002, a final report, an estimate, and a Proof of Loss in the amount of $737.31 were prepared by Mr. Horne for clean-up of the basement, replacement of the water heater, sump pump and water pump.  (Ex. 19).  On this same date, Mr. Horne forwarded a letter to Selective recommending

adjustment of the Plaintiff's flood loss claim. (Ex. 20).   On June 21, 2002, Plaintiff filed suit in

the United States District Court for the Eastern District of Pennsylvania.

Based on the facts, Selective respectfully suggests that Plaintiff's claims should be

summarily dismissed for any one of the following reasons:

1) Plaintiff has failed to comply with the express conditions precedent of the SFIP by failing to timely submit a signed and sworn Proof of Loss for her flood loss damages claims as per Article VII(J)(4) of the SFIP;

2) Plaintiff's claims for personal property contents items and building items located in the basement are not covered under Article III(A)(8) of the SFIP; and

3) Plaintiff's claims for loss of access to the insured property, additional living expenses, loss to the property caused directly by earth movement, and for damage to landscaping including, but not limited to trees, shrubs, and plants are not covered by the SFIP.

## LAW AND ARGUMENT

At the outset, Selective asks this Honorable Court to note that all costs of this litigation

are being borne by the U.S. Treasury, not Selective.   44 C.F.R. §62.23(i)(9).   As Selective is

asking this Honorable Court to end this litigation at this time on a motion and spare the U.S.

Treasury the costs associated with a full blown trial, Selective believes that it is important for the

Court to review the statutory scheme of the National Flood Insurance Program ("NFIP") found in

the cases of *Neill v. State Farm,* 159 F.Supp.2d 770, 772-774 (E.D.Pa. 2000), the *amicus brief*

filed by FEMA in *Van Holt v. Liberty Mutual Ins. Co.*, 163 F.3d 161 (3rd Cir. 1998)[4] and *Messa*

*v. Omaha Property and Casualty Insurance Company*, 122 F.Supp.2d 523, 528-529 (D.N.J.

2000), prior to the Court addressing the substantive arguments in the case at bar.   See also *Flick*

*v. Liberty Mutual Ins. Co.*, 205 F.3d 386, 387-389 (9th Cir. 2000), *cert denied*, 121 S.Ct. 305

---

[3] Because the original adjuster left the area and as there were questions regarding the depth of the water on the Plaintiff's property, Mr. Galante was asked to re-inspect the property.

[4] For the convenience of the Court, a copy of the *Van Holt amicus brief* is attached as Ex. 21.

(2000).  Although the *Neill, Van Holt, Messa* and *Flick* decisions set forth the statutory scheme, Selective presents the following highlights for the Court's attention.

This matter does not involve a typical insurance case.  Rather, it involves a unique insurance policy issued by Selective pursuant to the U.S. Government's National Flood Insurance Program which is the Standard Flood Insurance Policy promulgated by the Federal Emergency Management Agency ("FEMA").  Said Program is operated pursuant to the National Flood Insurance Act of 1968, as amended ("NFIA").  See 42 U.S.C. §4001, *et. seq.*

The NFIP is a creature of the U.S. Congress, administered by FEMA and underwritten by the U.S. Treasury.   All flood loss claims presented under the NFIP are paid directly with U.S. Treasury funds.  See 44 C.F.R. Pt. 62, App. A, Art. III(D)(1), and *Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir. 1998).  As such, Plaintiff is suing to recover U.S. Treasury funds.  *Van Holt, supra.* The SFIP is written by the Federal Government.   Selective is a Write-Your-Own ("WYO") Program carrier authorized to issue the SFIP under its logo pursuant to the "Arrangement" between itself and FEMA.  The "Arrangement" is a codified federal law found at 44 C.F.R. Pt. 62, App. A, and the Court may take judicial notice of its terms and provisions.  All policies of flood insurance issued by Selective are SFIPs.  (See Ex. 3).

Both the SFIP and the NFIP are strictly regulated by federal law and federal agencies.  The SFIP is issued pursuant to the NFIA and the applicable federal regulations found in Title 44 of the Code of Federal Regulations.  Importantly, this Court may take judicial notice of the SFIP for it is found in its entirety at 44 C.F.R. Pt. 61, App. A(1) (2001 edition), and incorporated into the Code of Federal Regulations by reference at 44 C.F.R. §61.13.  Selective may not alter, amend or waive any provision or condition of the SFIP or the NFIP.  The sole authority is the

Federal Insurance Administrator, and the waiver must be express and in writing.  See 44 C.F.R.
Pt. 61, App. A(1), Art. VII(D) and 44 C.F.R. §61.13(d).

Selective, by statute, appears in this matter as the "fiscal agent" of the United States. See
*Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998).  As such, every payment that Selective
determines <u>should</u> be made pursuant to an SFIP claim is made with one hundred percent U.S.
Treasury funds.  *Van Holt,* 163 F.3d at 165.   It should be noted that Selective has no reason to
look for ways to not pay an SFIP claim as all claims payments are "binding" upon the Federal
Government, and Selective is paid a 3.3% commission on all payments made.  See 44 C.F.R. Pt.
62.23(i)(1) and 44 C.F.R. Pt. 62, App. A, Art. III(C)(1), respectively. Therefore, Defendant's
only motive for not paying Plaintiff's claims would be that the claims do not fit within the
parameters of the Program.   In sum, due to the statutory scheme of the NFIP and the fact that
U.S. Treasury funds are at stake, strict adherence to the conditions precedent for payment of a
claim is required.  To make payments not in strict compliance with the SFIP would be contrary
to Congress' mandate and would violate the Appropriations Clause of the Constitution.

## I.    Summary Judgment Standard

Summary judgment is appropriate when the pleadings, depositions, answers to
interrogatories, and admissions on file, together with affidavits, demonstrate that there is no
genuine issue as to any material facts, and the moving party is entitled to judgment as a matter of
law.  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552-53 (1986).  When
reviewing a motion for summary judgment, the Court must draw all inferences from the
underlying facts in the light most favorable to the opposing party.  *Matsushita Elec. Ind. Co. v.
Zenith Radio*, 106 S.Ct. 1348, 1356 (1986).  In sum, the purpose of summary judgment is to
pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

trial. *Id*.  Accordingly, in such a situation as described above by the *Celotex* Court or where all issues can only be resolved in favor of the moving party, the moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex*, 106 S.Ct. at 2552.

In the case at bar, an examination of the pleadings and evidence presented demonstrate that there are no genuine issues as to any material facts, and Selective is entitled to judgment as a matter of law.

## II.    Policy Mandates Are Strictly Construed

It is well established that the provisions of the Policy must be "strictly" construed and enforced. *Messa, supra; Gagliardi v. Omaha Property and Casualty Ins. Co.,* 952 F.Supp. 212 (D.N.J. 1997); *Brookville Mining Equip. Corp. v. Selective Ins. Co. of America,* 74 F.Supp.2d 477 (W.D. Pa. 1999); *Flick, supra*; *Gowland, supra*; *Neuser v. Hocker*, 246 F.3d 508 (6th Cir.2001); and *Mancini v. Redland*, 248 F.3d 729 (8th Cir.2001).  Further, in *Gowland*, the U.S. Fifth Circuit held that "the provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced." 143 F.3d at 954. See also, *Federal Crop Ins. Corp. v. Merrill*, 68 S.Ct. 1 (1947)("*Merrill*") and *Office of Personnel Management v. Richmond*, 110 S.Ct. 2465 (1990) ("*Richmond*").  The U.S. Ninth Circuit, in *Wagner v. Director, FEMA*, 847 F.2d 515, 518 (9th Cir. 1988), likewise held that, "the conditions of an insurance policy offered pursuant to a congressionally-mandated program, such as the NFIP, must be strictly observed." See also, *Flick, supra*.  The reason for why FEMA regulations and the Policy's provisions must be "strictly construed and enforced," is constitutional.  In this regard, please recall that all payments are a "direct charge on the public treasury." *Flick, supra*, 205 F.3d at 394 and

*Gowland, supra*, 143 F.3d at 955.  As such, it is the "duty of all courts to observe the conditions defined by Congress for charging the public treasury."  *Merrill*, 68 S.Ct. at 3.

Further, the Appropriations Clause prohibits payment of U.S. Treasury funds in a manner not sanctioned by Congress.  *Flick*, 205 F.3d at 391.  More importantly, "protection of the public requires that those who seek public funds act with scrupulous regard for the requirements of the law; respondent could expect no less than to be held to the most demanding standards in its quest for public funds."  *Heckler v. Community Health Services of Crawford County, Inc.*, 104 S.Ct. 2218, 2225 (1984).  Therefore, if the conditions precedent to payment of these flood claims are not met, Selective is bound to strictly construe and enforce these requirements and is therefore prohibited from paying the claim.  In the matter at bar, the provisions of the SFIP are presented for this Honorable Court's "strict construction."

### III.    No Proof of Loss = No Recovery

There is no timely submitted signed and sworn Proof of Loss in support of any claim for any damages to the property at issue in this lawsuit as required by Article VII(J)(4) of the SFIP. As such, Plaintiff's claims are barred.  It is clearly established law within the U.S. Third Circuit that failure to submit a timely signed and sworn Proof of Loss prohibits recovery.  See *Petersen v. NFIP*, 200 F.Supp.2d 499, 505 (E.D. Pa. 2002), *Messa, supra; Brookville Mining, supra; Kennedy, supra; Gagliardi, supra; Continental Imports, Inc. v. Macy*, 510 F.Supp. 64 (E.D.Pa.1981); and *Harper v. National Flood Insurers Ass'n*, 516 F.Supp. 725 (M.D.Pa.1981).[5]

---

[5] In candor to the Court, in *Conrad v. Omaha Property and Casualty Insurance Company*, 1995 WL 350418, Judge O'Neill, applying state law, held that because plaintiff substantially complied with the proof of loss requirement, her failure to comply strictly with the policy's proof of loss requirement does not bar her claim.  *Id.* at *3.  However, Defendant respectfully suggests that this ruling has been impliedly overruled by *Messa v. Omaha Property and Casualty Insurance Company*, 122 F.Supp.2d 513, 521 (D.N.J. 3/8/00), which has been affirmed without publication by the U.S. Third Circuit.

In *Petersen, supra*, the Court noted that because the plaintiffs failed to satisfy a condition precedent (failure to timely submit a Proof of Loss), as a matter of law, they cannot prevail on their claim.  200 F.Supp.2d at 504.   In *Messa,* the U.S. Third Circuit affirmed the district court's ruling that failure to submit a Proof of Loss bars recovery.[6]   In *Brookville Mining, supra,* the plaintiffs purchased a Standard Flood Insurance Policy for their business.  The plaintiffs failed to submit a signed and sworn Proof of Loss within the requisite sixty (60) day time period.  In fact, the only sworn Proof of Loss submitted by the insured was over two years after the date of loss. In his opinion, Chief Judge Ziegler cited to the *Gowland* decision and stated that "[I]t is beyond dispute that plaintiffs failed to file proof of loss forms within sixty days of the loss.  Plaintiffs' failure to timely file a proof of loss bars the claim (citation omitted)."   *Brookville,* 74 F.Supp.2d at 480.

In addition to those cases, the SFIP's Proof of Loss requirement has been strictly enforced by numerous courts across the country.  (For example, see *Flick, supra; Neuser v. Hocker*, 246 F.3d 508 (6th Cir. 2001); *Forman v. FEMA*, 138 F.3d 543 (5th Cir. 1998); *Wagner, supra*; *Dogwood Grocery, Inc. v. South Carolina Ins. Co.,* 49 F.Supp.2d 511 (W.D.La 1999); *Jamal v. Travelers*, 131 F.Supp.2d 910 (S.D. Tex. 2001); *Novikov v. Allstate*, 2001WL 1704129 (E.D.Cal.2001); *Durkin v. State Farm Mut. Ins. Co.*, 3 F.Supp.2d 724 (E.D.La.1997), *aff'd*, 141 F.3d 1163 (5th Cir.1998); *Phelps v. Federal Emergency Management Agency*, 785 F.2d 13 (1st Cir.1986); *Jenkins v. U.S. Dept. of Housing & Urban Development*, 780 F.2d 1549 (11th Cir. 1986); *West Augusta Development Corp. v. Giuffrida*, 717 F.2d 139 (4th Cir.1983)).

The provisions of the SFIP must be strictly construed and enforced by the courts, specifically because the funds used to pay flood insurance claims constitute a direct charge upon

---

[6]    For the convenience of the Court, a copy of the U. S. Third Circuit's unpublished

the national treasury.  As the U.S. Ninth Circuit further explained in *Flick, supra*, 205 F.3d at 390-91:

> Federal law has long recognized that an insured must comply strictly with the terms and conditions of a federal insurance policy.  See *Federal Crop Ins. Corp. v. Merrill*, 68 S.Ct. 1 (1947).  In *Merrill*, the Supreme Court recognized a general "duty of all courts to observe the conditions defined by Congress for charging the public treasury."  *Id*. at 1.  The court held that a group of farmers could not recover for crop losses under a federal crop insurance policy because their claims did not comply with the terms and conditions for coverage set forth in the wheat regulations. [FN5] See *Id*.  In so holding, the court noted that "not even the temptations of a hard case" may provide a basis for a recovery that is contrary to federal regulations.  *Id*. at 1
>
> In the context of flood insurance, we have recognized the heavy burden that a claimant must overcome in order to avoid the sworn proof of loss requirement in the Standard Flood Insurance Policy. . . . [discussing *Wagner v. Dir. FEMA*, 847 F.2d 515 (9th Cir. 1988)]
>
> While our result in *Wagner* is sound, the Supreme Court has since recognized that our power to avoid the terms and conditions of a federal insurance policy is even more curtailed. . . . [discussing *OPM v. Richmond* and the Appropriations Clause] its fundamental purpose is "to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to . . . the individual pleas of litigants."  *Richmond*, 110 S.Ct. at 2465.

Subsequent to the Supreme Court's decision in *OPM v. Richmond* in 1990, not one court has *not* enforced the NFIP's strict proof of loss requirement.  While a variety of theories have been raised to circumvent that requirement, none have been successful at any time since 1990.

Turning now to the specific "requirements in case of loss," SFIP Articles VII(J)(1), (J)(2), (J)(3), and J)(4)[7] provide that:

(J) *Requirements in Case of Loss*:  In case of a flood to the insured property, you must:

---

memorandum opinion in *Messa v. Omaha* is attached as Ex. 22.

[7]  FEMA re-wrote all three versions of the SFIP effective December 31, 2000.  Therefore, it is **critical** that the court review the correct version of the SFIP issued and in place at the time of the events in question.  In this case, because the date of loss is June 16, 2001 and the term of the policy in place is from January 28, 2001 to January 28, 2002, Selective respectfully asserts the correct version of the SFIP is the 2001 edition.

    1.  Give prompt written notice to us;

    2.  As soon as reasonably possible, separate the damaged and undamaged property, putting it in the best possible order so that we may examine it;

    3.  Prepare an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss.  Attach all bills, receipts, and related documents;

    4.  <u>Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information</u>:[8]

As shown above, the policy requires that (1) written notice of the loss be provided promptly, and (2) the formal proof of loss be submitted within 60 days after the loss.  Although SFIP Article VII(J)(1) provides that the claimant must give prompt written notice, such "notice" would only satisfy one of four prerequisites that the claimant must comply with to satisfy the policy's entire list of requirements.  Mere notice will not satisfy the requirements of the policy. *Messa, supra; Flick, supra; Gowland, supra.*

In addition to simply notifying the insurer of the loss, the SFIP also requires claimants to submit a signed and sworn Proof of Loss setting out the nature, cause and value of the loss, as well as their interest in the damaged property.  It is not sufficient to show that the insured *substantially* complied with the Proof of Loss requirement or that the insurer suffered no prejudice.  *Mancini,* 248 F.3d at 734; *Gowland*, 143 F.3d at 954; and *Flick*, 205 F.3d at 390. Further, Articles VII(J)(4) and (7) clearly states what information is to be provided in the Proof of Loss, and that the <u>Insured</u> must send a signed and sworn Proof of Loss to the <u>Insurer</u> within 60 days of the date of the loss <u>even if</u> the adjuster does not furnish the form.  *Wagner,* 847 F.2d at 518.  The Proof of Loss does not have to be on a pre-printed form supplied by the Insurer.  To

---

[8] The remainder of this Article is omitted as it is not material to the instant motion.

be a valid Proof of Loss statement, it must contain the information listed in Article VII(J)(4), and it must be signed <u>and</u> sworn to under the penalty of perjury.

Further, Article VII(J)(7)[9] candidly warns potential claimants not to rely upon the independent adjuster who is provided as a "courtesy only" to supply a Proof of Loss or for assistance in complying with the Proof of Loss requirement.[10]  The WYO Carrier is not required to "demand" that a claimant comply with the requirements of the SFIP.  *Humphrey v. NFIP*, 885 F.Supp. 133 (D.Md. 1995).  The regulations themselves provide the necessary incentive and consequences for noncompliance.  *Id*.

Plaintiff cannot claim ignorance of the Proof of Loss requirement because the SFIP is itself a codified federal law, and all persons are charged with knowledge of the published federal laws - especially those participating in a U.S. Treasury-funded insurance program!  See *Flick, supra*; *Messa, supra*; *Merrill,* 68 S.Ct. at 3.  The principle established by the Supreme Court in *Merrill, supra*, that persons who deal with the government are presumed to know the regulations applicable to their dealings, was reaffirmed twice by the Supreme Court.  See *Schweiker v. Hansen,* 101 S.Ct. 1468 (1981) and *Heckler v. Community Health Services of Crawford County, Inc.,* 104 S.Ct. 2218 (1984).

---

[9]  Article VII(J)(7) provides as follows:

> (J)(7).  The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it.  However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it.  44 C.F.R. Pt. 61, App. A(1), Article VII(J)(7)(2001 edition).

[10]  *Wagner, supra,* 847 F.2d at 519; *Schumitzki v. FEMA,* 656 F.Supp. 430 (D.N.J. 1987); *McCrary v. FEMA*, 642 F.Supp. 544 (E.D.N.C. 1986).

Therefore, as a matter of federal law, the Plaintiff's claims cannot be paid because of her failure to comply with the Proof of Loss requirement. *Messa, supra*; *Gagliardi, supra*; *Brookville Mining, supra; Flick, supra;* and *Gowland, supra.* See also *Durkin, supra*. To pay the Plaintiff's claims would be to violate the conditions imposed by the U.S. Government for payment of U.S. Treasury funds, and would violate the U.S. Constitution's Appropriations Clause. As noted by the U.S. Ninth Circuit in *Flick,* 205 F.3d at 391:

> It is an axiomatic principle of constitutional law that the judiciary's power is limited by a valid reservation of congressional control over public funds. See *Richmond,* 496 U.S. at 425, 110 S.Ct. 2465. 'Any exercise of a power granted by the Constitution to one of the other branches of Government is limited by a valid reservation of congressional control over funds in the Treasury.' Indeed, we would equally usurp Congress's exclusive power to appropriate money were we to award an unauthorized money claim based on a theory of substantial compliance or notice prejudice. We therefore interpret *Richmond* to preclude a court from granting a remedy that draws funds from the Treasury in a manner that is not authorized by Congress.

Selective very respectfully points out that if the U.S. Ninth Circuit cannot violate the Appropriations Clause of the U.S. Constitution, then Selective certainly cannot!

In the present matter, because the date of loss was June 16, 2001, Plaintiff had until August 15, 2001 to submit a signed and sworn Proof of Loss. Article VII(J)(4) of the SFIP. Despite the reminder letter of June 19, 2001, Plaintiff did not submit a Proof of Loss until September 18, 2001, almost ninety (90) days after the date of loss. (See Ex. 4). More importantly, Plaintiff was represented by an attorney throughout the entire claims handling process. Certainly, an attorney would be aware of the law! In fact, Plaintiff admitted in her Complaint that the independent adjuster forwarded a Proof of Loss to the Plaintiff to sign on or about July 17, 2001. (See Complaint, ¶17). As such, Plaintiff, as well as her attorney, was aware that a Proof of Loss was a necessary prerequisite in order for payment to be made. As there is no <u>timely</u> signed and sworn Proof of Loss submitted by the Plaintiff for the flood loss

damages alleged in this lawsuit, federal law and the Appropriations Clause of the U.S. Constitution prohibit payment of the Plaintiff's claim.  See *Messa, supra, Petersen, supra*, *Flick, supra*; *Gowland, supra.*  Given these material facts, and no others, Plaintiff has failed to comply with the requirements of the SFIP.  Accordingly, Selective respectfully asserts that it is not necessary for this matter to proceed any further, and suggests that all of the Plaintiff's claims for damages under the SFIP should be summarily dismissed.

**IV.    Plaintiff's Claims for Damages for Personal Property Contents Items and Building Items Located in the Basement are Not Covered as per Article III(A)(8) of the SFIP.**

The Insuring Agreement of the Plaintiff's SFIP provides that Selective would insure "against all direct physical loss by or from flood to the insured property" and then only to the extent permitted under the terms of the National Flood Insurance Act of 1968 and its Amendments and Title 44 of the Code of Federal Regulations.

Further, the SFIP provides limited coverage for items located in the basement. Specifically, Article III(A)(8) of the SFIP provides as follows:

III(A)(8).  Items of property … in a basement ….  Coverage is limited to the following:

   a.  Any of the following items, if installed in their functioning locations and, if necessary for operations, connected to a power source:.

      (1) Central air conditioners;
      (2) Cisterns and the water in them;
      (3) Drywall for walls and ceilings in a basement and the cost of labor to nail it, unfinished and unfloated and not taped, to the framing;
      (4) Electrical junction and circuit breaker boxes;
      (5) Electrical outlets and switches;
      (6) Elevators, dumbwaiters and related equipment, except for related equipment installed below the base flood elevation after September 30, 1987;
      (7) Fuel tanks and the fuel in them;
      (8) Furnaces and hot water heaters;
      (9) Heat pumps;
      (10) Nonflammable  insulation in a basement;

(11)   Pumps and tanks used in solar energy systems;

(12)   Stairways and staircases attached to the building, not separated from it by elevated walkways;

(13)   Sump pumps;

(14)   Water softeners and the chemicals in them, water filters, and faucets installed as an integral part of the plumbing system;

(15)   Well water tanks and pumps;

(16)   Required utility connections for any item in this list; and

(17)   Footings, foundations, posts, pilings, piers, or other foundation walls and anchorage systems required to support a building.

In the case at bar, as a result of Tropical Storm Allison, Plaintiff claimed damages for items located in the basement (which included the electrical system, well pump and hot water heater) and damages to items located on the first floor.  (See Complaint, ¶9 and 10).  In support of her claim for damages, Plaintiff, through her attorney, submitted an estimate for personal property contents items located in the basement and for repairs to the basement, cleaning the basement and replacement of the well pump and sump pump.  (See Ex. 9).  Also, Plaintiff, through her public adjuster, submitted an estimate in the amount of $36,281.66, which included items located in the basement as well as the living/dining room and kitchen, which are located on the first floor.  (See Ex. 11).

The photograph submitted by the Plaintiff's own public adjuster showed that the basement floor and three of the stair treads appeared wet, but the fourth and fifth stair tread were dry and only had a wet footprint left by someone who walked up the stairs.  (See Ex. 17).  Moreover, the second adjuster pulled some of the paneling away from the wall and found that the insulation was not wet, the studs and floor sill plates did not show evidence of any water staining and the back of the paneling had no water marks.  *Id.*  In addition, during the first inspection, the electricity was still working.  If the water level was high enough to reach the first floor and over the electric panel box, then how could the electricity still be operating?  Further, the Plaintiff

advised the first adjuster that no water entered into the kitchen, which was actually 8 inches lower than the main first floor.  (See Ex. 16).  If water did not get into the kitchen, then how could it get into the first floor?  Defendant submits that no water could have reached the first floor.  Therefore, there was no damage caused directly by or from flood to the first floor as per the Insuring Agreement.

In addition, Plaintiff submitted a list of personal property contents items such as clothing, lawn mower, weed whacker and fan which were located in the basement of the property, which Plaintiff claimed was damaged as a result of Tropical Storm Allison.  (See Ex. 9).  However, Article III(A)(8) does not provide coverage for personal property contents items located in the basement at all.   Further, Plaintiff's public adjuster submitted a Building Item estimate which included repairs for building items located in the basement, such as painting, replacing molding, insulation, subfloor, replacing wall to wall carpet, replacing basement window, window capping. As per Article III(A)(8), these repair items are not afforded coverage. Therefore, Plaintiff's claims for damages to personal property contents items and building items located in the basement cannot be paid as there is no coverage afforded by the SFIP.

Article VII(R)[11] of the SFIP provides that a claimant must meet all the conditions precedent prior to filing a lawsuit.  Since Plaintiff has failed to timely submit a signed and sworn Proof of Loss for her flood loss damages resulting from Tropical Storm Allison, the conditions precedent to making a claim (and thus payment of U.S. Treasury funds) under the policy were

---

[11]  Article VII(R) provides as follows:

R.  *Suit Against Us*.  You may not sue us to recover money under this policy unless you have complied with all the requirements of the policy. … This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under this policy.  44 C.F.R. Pt. 61, App. A(1), Article VII(R)(2001 edition).

not fulfilled.  As such, no payment can be made.  Moreover, and as a matter of federal law, conditions precedent under the SFIP such as the Proof of Loss requirement cannot be waived except by the Federal Insurance Administrator.  44 C.F.R. § 61.13(d) and Article VII(D) of the SFIP.  There has been no evidence of a waiver of the Proof of Loss requirement by the Federal Insurance Administrator in this matter. (See Ex. 3)  Even if there was a waiver, the Plaintiff's claims for damages resulting from Tropical Storm Allison are not afforded coverage under Article III(A)(8) of the SFIP.  As such, Defendant respectfully asserts that there is no means by which anything may be paid on the Plaintiff's claim. To do so would violate the Appropriations Clause of the U.S. Constitution as illustrated in *Messa, supra* and *Flick, supra*.  Accordingly, Defendant respectfully suggests that all of the Plaintiff's claims under the SFIP should be summarily dismissed.

**V.    Plaintiff's claims for loss of access to the insured property, additional living expenses, loss to property caused directly by earth movement, and for damage to landscaping including, but not limited to trees, shrubs, and plants are not covered by the SFIP.**

In Plaintiff's Complaint, Plaintiff claimed that the flooding damage was so substantial that it necessitated Plaintiff vacating her premises.  (Complaint, ¶12).  However, Article V(A)(2) does not afford coverage for loss of access to the insured property.  Further, Article V(A)(5) does not afford coverage for any additional living expenses incurred while the insured building is being repaired or is uninhabitable for any reason.  As such, Plaintiff is not entitled to these damages as the SFIP does not provide coverage for same.

On the Verification of Real Property form completed by the Plaintiff for the U.S. Small Business Administration, Plaintiff claimed that there was damage to the landscaping and soil erosion on the property as a result of Tropical Storm Allison.  With regard to landscaping, Article IV(6) does not afford coverage for landscaping including, but not limited to trees, shrubs,

and plants.  With regard to property caused by soil erosion due to the flood, Article V(C) of the SFIP does not afford coverage for loss to property caused directly by earth movement except for the limited exception noted in the paragraph following Article V(C)(6), which provides coverage for losses from mudflow and land subsidence as a result of erosion that are specifically covered under FEMA's definition of flood.  In this case, Plaintiff has not presented any evidence to support a claim meeting the requirements of this narrow exception.  As such, Plaintiff's claim for property damage caused by soil erosion due to flood is not covered by Article V(C)(6) of the SFIP.

<u>**CONCLUSION**</u>

Selective submits that this matter should be dismissed as the conditions precedent to a claim payment have not been met.  First, Plaintiff has failed to timely submit a signed and sworn Proof of Loss for the damages allegedly caused by Tropical Storm Allison.  Second, Plaintiff's claims for damages to personal property contents items and building items located in the basement are not covered under Article III(A)(8).  Third, Plaintiff's claim for items located on the first floor is not afforded coverage as the damage to these items are not caused directly by or from flood.  Fourth, Plaintiff's claims for loss of access to the insured property and additional living expenses are not covered by Articles V(A)(2) and V(A)(5), respectively.  Fifth, Plaintiff's claim for property damage caused by soil erosion due to flood is not covered by Article V(C). Further, Plaintiff has not presented any evidence meeting the requirement of the narrow exception following Article V(C)(6).  Sixth, Plaintiff's claim for damage to landscaping including, but not limited to trees, shrubs, and plants is not covered by Article IV(6) of the SFIP. As such, Selective respectfully moves this Honorable Court for a judgment, pursuant to

Fed.R.Civ.P. 56(c), summarily dismissing all of the Plaintiff's claims, with prejudice and at her

cost.

Respectfully submitted,

_____

DANIEL KREBBS
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
1845 Walnut St., 21st Fl.
Philadelphia, Pennsylvania 19103
Telephone: 215-575-2793
Local Counsel for Defendant,
Selective Insurance Company, Inc.

NIELSEN LAW FIRM, LLC
Gerald J. Nielsen  La.S.B. # 17078
Attorney-in-Charge
The Pelican Building
2121 Airline Drive, Suite 200
Metairie, Louisiana 70001
(504) 837-2500
(504) 832-9165 FAX
Of Counsel

Dated:  November _____, 2002.
\01_21\LIAB\DDK\LLPG\366153\KSZ\15036\00113

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing pleading has been served on Plaintiff's counsel, Patrick G. Murphy, Esq., Kelley and Murphy, Union Meeting Corporate Center V, 925 Harvest Drive, Suite 160, Blue Bell, Pennsylvania 19422.

_____
DANIEL D. KREBBS, ESQUIRE

Done, this _____ day of November, 2002

\01_21\LIAB\DDK\LLPG\366153\KSZ\15036\00113