UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————

|  |  |  |
|---|---|---|
| MARIA DEVERANT | : | |
| 1036 Limekiln Pike | : | CIVIL ACTION NO. 02-CV-3801 |
| Maple Glen, Pennsylvania 19002 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| versus | : | |
| | : | |
| SELECTIVE INSURANCE COMPANY | : | |
| INC. | : | |
| 40 Wantage Avenue | : | |
| Branchville, New Jersey 07890 | : | |
| | : | |
| Defendant. | : | |

———————————————————

## RULE 12(b)(6) AND RULE 12(c) MOTION TO DISMISS

NOW INTO COURT, through undersigned counsel, comes the Defendant, Selective Insurance Company, Inc. ("Selective"), appearing herein in its "fiduciary"[1] capacity as the "fiscal agent of the United States"[2] and at the expense of the U.S. Treasury,[3] and moves this Honorable Court, pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c), for an Order dismissing all of the state-law based allegations of the Plaintiff's Complaint, leaving to proceed only the breach of contract action.

1.    As will be more fully explained in the attached memorandum, Selective contends that all state-law based claims for extra-contractual damages should be dismissed because such claims are preempted and barred by federal constitutional, statutory, and regulatory law. See

———————————————————

[1] 44 C.F.R. Pt. 62.23(f)

[2] *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998)

[3] *Van Holt v. Liberty Mutual Ins. Co.,* 163 F.3d 161 (3rd Cir. 1998)(on rehearing).

*Neill v. State Farm Fire and Cas. Co.*, 159 F.Supp.2d 770 (E.D.Pa. 2000) and *Gainor v. Nationwide*, Case No. 2001-CV-0143 (E.D.Pa. 04/16/01).

2.      Accordingly, Selective respectfully suggests that all such claims appearing within the Plaintiff's Complaint fail to state a claim for which relief can be granted, and dismissal of all such state law claims is warranted.

Respectfully submitted,

_____
DANIEL KREBBS
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
1845 Walnut St., 21st Fl.
Philadelphia, Pennsylvania 19103
Telephone: 215-575-2793
Local Counsel for Defendant,
Selective Insurance Company, Inc.

NIELSEN LAW FIRM, LLC
Gerald J. Nielsen  La.S.B. # 17078
Attorney-in-Charge
The Pelican Building
2121 Airline Drive, Suite 200
Metairie, Louisiana 70001
(504) 837-2500
(504) 832-9165 FAX
Of Counsel

Dated:  November _____, 2002.
\01_21\LIAB\DDK\LLPG\366149\KSZ\15036\00113

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been served on Plaintiff's counsel, Patrick G. Murphy, Esq., Kelley and Murphy, Union Meeting Corporate Center V, 925 Harvest Drive, Suite 160, Blue Bell, Pennsylvania 19422.


_____
DANIEL D. KREBBS, ESQUIRE


Done, this ____ day of November, 2002

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

|  |  |  |
|---|---|---|
| MARIA DEVERANT<br>1036 Limekiln Pike<br>Maple Glen, Pennsylvania 19002 | : | CIVIL ACTION NO. 02-CV-3801 |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| versus | : |  |
|  | : |  |
| SELECTIVE INSURANCE COMPANY<br>INC.<br>40 Wantage Avenue<br>Branchville, New Jersey 07890 | : |  |
|  | : |  |
| Defendant. | : |  |

---

## MEMORANDUM IN SUPPORT OF RULE 12(b)(6) and 12(c) MOTION TO DISMISS

MAY IT PLEASE THE COURT:

Defendant, Selective Insurance Company, Inc. ("Selective"), appearing herein in its "fiduciary"[1] capacity as the "fiscal agent of the United States"[2] and at the expense of the U.S. Treasury,[3] respectfully requests that this Honorable Court dismiss all state-law-based extra-contractual claims against Selective found in the Plaintiff's Complaint – that being all of the various claims of bad faith under 42 Pa. C.S.A. §8371, claims under the Unfair Trade Practices and Consumer Protection Law under 73 Pa. C.S.A. §201-1, *et seq.*, Unfair Insurance Practices Act under 40 Pa. C.S.A. §1171.1, *et seq.*, breach of fiduciary duty, breach of the duty of good faith and fair dealing, fraud – intentional misrepresentation regarding the nature and scope of the

---

[1] 44 C.F.R. Pt. 62.23(f).

[2] *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998).

[3] *Van Holt v. Liberty Mutual Ins. Co.,* 163 F.3d 161 (3rd Cir. 1998)(on panel rehearing).

claims handling procedures, fraud – negligent misrepresentation regarding the nature and scope of the claims handling procedures, punitive damages, interest and attorney's fees.  This exact Motion has been granted by the Honorable Judge Mary A. McLaughlin in the case entitled "*Neill v. State Farm*," 159 F.Supp.2d 770 (E.D.Pa. 2000), wherein Judge McLaughlin held that all extra-contractual state-law causes of action relating to the handling of claims under the National Flood Insurance Act are preempted by federal law.  See also, *Gainor v. Nationwide*, Case No. 2001-CV-0143 (E.D.Pa. 04/16/01).  Accordingly, moving defendant respectfully requests that the extra-contractual state-law-based claims found in the Plaintiff's Complaint be dismissed as such claims are barred and preempted as a matter of federal constitutional, statutory and regulatory law.

### PREAMBLE

The Plaintiff has sued Selective because of its decision to not pay the Plaintiff <u>federal</u> benefits under a U.S. Treasury-underwritten Standard Flood Insurance Policy ("SFIP" or "Flood Policy").  Selective is contesting the Plaintiff's lawsuit, because it holds to a belief that federal benefits are not recoverable in the situation at bar, and because Selective believes that flood insurance claimants cannot resort to hyperbolic state law claims to cajole the fiscal agent of the United States into paying federal benefits, as Plaintiff is seeking to do in this case.  Relying upon state law, the Plaintiff seeks not only federal recoveries under the SFIP, but in addition, seeks state-law-based recoveries premised upon Plaintiff's belief that her flood insurance claim was not properly handled.  However, there are <u>three</u> fundamental flaws in the positions advanced by the Plaintiff's pleadings:

First, Selective cannot alter, amend, or waive <u>any</u> provision of the Flood Policy. See 44 C.F.R. §61.13(d) and 44 C.F.R. Pt. 61, App. A(1), Art. VII(D).  Further, with respect to handling

claims thereunder, Selective is never allowed (or expected) to adjust claims in accordance with the typical "reasonableness" principles embodied in the various States' consumer protection laws. To the contrary, Selective is at all times constitutionally required to "strictly construe and enforce" all of the provisions of the Flood Policy because claims are paid with U.S. Treasury funds. *Gowland v. Aetna,* 143 F.3d 951, 954 (5th Cir. 1998); *Flick v. Liberty Mutual Ins. Co.*, 205 F.3d 386 (9th Cir. 2000), *cert. denied,* 531 U.S. 927 (2000).

Second, Selective has no incentive whatsoever to pay its customers anything less than *top dollar* on a National Flood Insurance Program ("NFIP") claim.  As has been recognized by many Courts, including *3608 Sounds Ave. Condo. Assn. v. South Carolina Ins. Co.*, 58 F.Supp.2d 499 (D.N.J. 1999) and *Eddins v. Omega Ins. Co.*, 825 F.Supp. 752 (N.D.Miss. 1993), insurance companies that issue the U.S. Government's Flood Policy are paid by the Federal Emergency Management Agency ("FEMA") on a percentage basis, such that the higher the claim payment, the more the carrier is paid.  *Id*. See also, 44 C.F.R. Part 62, App. A, Art. III(C)(1)(The Write-Your-Own ("WYO") Program carrier makes a 3.3% commission on a covered loss). Thus, if this Honorable Court were to rule against Selective on the breach of contract action, Selective would actually profit thereby.

Third, virtually every Court to consider this issue has held that state-law-based extra-contractual claims sought to be raised in the context of the claims handling of an NFIP claim are barred and preempted by federal law, as per the Appropriations and Supremacy Clauses of the U.S. Constitution.[1]  Once the three legal propositions noted above are understood, the following point becomes clear: The Plaintiff clearly has the right to ask this Honorable Court to evaluate

---

[1]  For the Court's convenience, attached as Exhibit 1 is a listing of NFIP cases, where plaintiffs' state-law-based extra-contractual claims arising out of claims handling were dismissed as preempted.

whether she is entitled to federal benefits under the Flood Program; however, the Plaintiff plainly may <u>not</u> cajole the U.S. Government's "fiduciary" and "fiscal agent" into releasing federal funds to her that are outside the parameters of the NFIP.

## STANDARD OF REVIEW FOR RULE 12(b)(6) and 12(c)

Given the posture in which this case comes to the Court in this Rule 12(b)(6) Motion to Dismiss, all well pleaded <u>facts</u> (as opposed to conclusory allegations) contained within the Complaint are to be accepted as true. *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995); *Schrob v. Catterson*, 948 F.2d 1402 (3rd Cir. 1991). The claims in question should only be dismissed if no relief could be granted under any set of facts that could be proved. *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3rd Cir. 1990)(citing *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3rd Cir. 1988). The Court may also consider documents attached to the Complaint or documents of public record that are integral to and explicitly relied on in the Complaint. *Phillips v. LCI International, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

Selective admits that it issued a Flood Policy to the Plaintiff for the property located at 1036 Limekiln Pike, Maple Glen, PA 19002. See also Plaintiff's Complaint, ¶6. Further, please note that the SFIP is the only policy of flood insurance available in communities participating in the NFIP. See *Garcia v. Omaha Prop. & Cas. Ins. Co.*, 933 F.Supp. 1064 (S.D. Fla. 1995), *aff'd* at 95 F.3d 58 (11th Cir. 1995). As such, there can be no argument that there is any other policy of flood insurance at issue in this suit. The SFIP is published in its entirety at 44 C.F.R. Pt. 61, App. A(1). As the policy is published as law within the Code of Federal Regulations, Defendant respectfully requests this Honorable Court take judicial notice of its provisions. This Honorable Court also has the power to consider, within the scope of a Rule 12(b)(6) motion, all matters of which it may take judicial notice. *Davis v. Bayless*, 70 F.3d 367, 372 n. 3 (5th Cir.1995).

Further, as was recognized by the U.S. Eighth Circuit in *Mancini v. Redland*, 248 F.3d 729, 733 (8ᵗʰ Cir. 2001):

> The policy the [plaintiff] bought is more than a contract; it is also a regulation of the Federal Emergency Management Agency, stating the conditions under which federal flood-insurance funds may be disbursed to eligible policyholders.

By filing this motion, Selective seeks to make certain that it can fulfill its fiduciary responsibilities to FEMA during this litigation.  44 C.F.R. Pt. 62.23(f).  Selective seeks to know that if it honors its constitutional obligation to "strictly construe and enforce" the provisions of the U.S. Treasury-underwritten SFIP, it will not risk punishment for its decision *under state law*.  Pursuant to Fed.R.Civ.P. Rule 12(b)(6), if the Plaintiff fails to state a claim upon which relief may be granted, a motion to dismiss said claims as being preempted and barred by federal constitutional, statutory and regulatory law is appropriate.  Thus, Defendant moves this Court to dismiss these claims at this time and at Plaintiff's cost.

## LAW AND ARGUMENT

Selective will explain fully herein why Plaintiff's state law claims should be dismissed.  However, before it submits its arguments with respect to preemption, Selective respectfully requests that the Court review the history and statutory scheme of the Flood Program as set forth in *Neill*, 159 F.Supp.2d at 772-774 and the *amicus brief* filed by FEMA in *Van Holt v. Liberty Mutual Ins. Co.*, 163 F.3d 161 (3ʳᵈ Cir. 1998).[2]  See also, *Flick, supra,* 205 F.3d at 387-389.

**I.    Law Governing Claims is Exclusively Federal**

The front page of every SFIP expressly states that all flood insurance policies are subject to the terms of the National Flood Insurance Act of 1968 ("NFIA"), 42 U.S.C. §4001, *et seq*., and the regulations found in Title 44 of the Code of Federal Regulations.  (The last section of

---

[2]  For the Court's convenience, the *Van Holt amicus brief* is attached as Exhibit 2.

each SFIP repeats this same requirement.)  Therefore, claimants are bound not only by the terms

of the policy, but also by the terms of the statutes and applicable regulations.[3]  Construction or

interpretation of an insurance contract is purely a question of law for the Court to decide.[4]

Furthermore, in interpreting a flood insurance policy issued pursuant to the NFIP, the Court must

look to federal common law.[5]  Notably, the Plaintiff is bound by this choice of law provision as it

is part of the contract she seeks to enforce.  See 44 C.F.R. Pt. 61, App. A(1), Art. IX ("What Law

Governs").

A.    States Have <u>Never</u> Had Authority Over The NFIP

A review of the history of the NFIP reveals that the States have never had any regulatory

control over <u>any</u> of the Program's "operations," regardless of how one might approach any

possible claim.[6]  As a foundational matter, the U.S. insurance industry is an operation of

interstate (not intrastate) commerce.  As such, its regulation is solely the province of the National

Government. U.S. Const. Art. 1, §8, Par. 3.  Because of this, the <u>only</u> reason that the various

States are allowed to operate insurance regulatory commissions and pass insurance laws is

because Congress specifically allowed them to do so, and then agreed (as a general proposition)

---

[3] *Mussoline v. Morris*, 692 F.Supp. 1306 (S.D. Fla. 1987).

[4] *Sodowski v. National Flood Ins. Program*, 834 F.2nd 653 (7th Cir. 1987), *cert. denied*, 108 S.Ct. 2035 (1988); *Atlas Pallet Inc. v. Gallagher*, 725 F.2d 131 (1st Cir. 1984); *Smoak v. Independent Fire Ins. Co.*, 874 F.Supp. 110 (D.S.C. 1994); *Rockland Federal Credit Union v. Witt*, 853 F.Supp. 14 (D.Mass. 1994).

[5]  *Leland v. Federal Insurance Administrator*, 934 F.2d 524 (4th Cir. 1991); *Wright v. Director, FEMA*, 913 F.2d 1566 (11th Cir. 1990); *Sodowski v. National Flood Ins. Program*, 834 F.2nd 653 (7th Cir. 1987), *cert. denied*, 108 S.Ct. 2035 (1988); *U.S. v. Parish of St. Bernard*, 756 F.2d 1116 (5th Cir. 1985), *cert. denied*, 106 S.Ct. 830 (1985); *Hanover Building Materials, Inc. v. Guiffrida*, 748 F.2d 1011 (5th Cir. 1984).

[6] Please see *Jamal v. Travelers*, 97 F.Supp.2d 800, 805 (S.D. Tex. 2000), quoting the affidavit from the Texas Department of Insurance.

not to preempt state insurance law via the McCarren-Ferguson Act.  15 U.S.C. §1011, *et seq*.

That Act effectively tenders to the States the inherently <u>national</u> power over regulation of the

U.S. insurance industry.   However, Congress specifically and expressly exempted from this

tender all instances where the U.S. Government operates a business of insurance.   On this precise

point, please see 15 U.S.C. §1012(b), which reads as follows:

> (b) Federal regulations
>
> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, **unless such Act specifically relates to the business of insurance** ... (emphasis added)

The meaning and import of the language just quoted was established by the U.S. Supreme

Court in *Barnett Bank of Marion County v. Nelson*, 116 S.Ct 1103 (1996).  In that decision, the

Supreme Court conducted an in-depth discussion of the McCarren-Ferguson Act's "language and

purpose," as well as the "circumstances surrounding" its enactment.  *Id*. at 1111-12.  As part of

its analysis, the Supreme Court held that the language, "specifically relates to the business of

insurance" found at 15 U.S.C. §1012(b) is to be interpreted "broadly."   In this regard, the Court

explained:

> Our conclusion rests upon the McCarren-Ferguson Act's language and purpose taken together.  Consider the language - - "specifically relates to the business of insurance."   In ordinary English, a statute that says that banks may act as insurance agents, and that the Comptroller of the Currency may regulate their insurance-related activities "relates" to the insurance business.   The word "relates" is highly general, and this Court has interpreted broadly in other preemption contexts.  *Id*. at 1111.

The specific question of whether the McCarren-Ferguson Act precludes FEMA's

regulations from preempting state insurance regulation was directly addressed in *Masoner v.*

*F.C.I.C.*, 81 F.Supp.2d 1052 (D.Idaho 2000). In *Masoner*, the Court quickly dispensed with the

argument as follows:

> At the hearing, Plaintiffs' counsel argued for the first time that the McCarren-Ferguson Act, 15 U.S.C. §1011-1015, saves Plaintiffs' state law claims from federal preemption. However, this argument ignores §1012(b) of that Act, which provides as follows:
>
> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance …
>
> 15 U.S.C. §1012(b) (emphasis added). In this case, through the enactment of the National Flood Insurance Act, Congress has expressly authorized FEMA, an agency of the federal government, to regulate the business of flood insurance, including the methods by which claims are adjusted and paid for any damage to or loss of property covered by a Standard Flood Insurance Policy. 42 U.S.C. §4019. Thus despite Plaintiffs' assertions to the contrary, the McCarran-Ferguson Act's savings clause does not preclude the application of the provisions of the National Flood Insurance Act in this case. See *Humana Inc. v. Forsyth* 525 U.S. 299, 299, 119 S.Ct. 710, 716 142 L.Ed.2d 753 (1999) ("The McCarran-Ferguson Act … precludes application of a federal statute in the face of state law 'enacted … for the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance …' "). *Masoner, supra* 81 F.Supp.2d at FN3.

*Barnett Bank* and *Masoner*, reaffirm that (1) the McCarren-Ferguson Act is the basis

upon which the Federal Government can displace insurance state-law-based insurance

regulations when Congress directly enters the field; and (2) that Congress expressly reserved the

power, under the Supremacy Clause of the U.S. Constitution, to have federal law govern the

question where Congress enacted legislation which "specifically relates to the business of

insurance." Beyond question, the National Flood <u>Insurance</u> Act "specifically relates to the

business of insurance."

**B.    Policy Mandates are "Strictly Construed" Because of the Constitution**

Selective next respectfully asks this Honorable Court to focus upon the following specific

provisions of our Constitution:

> Art. 1 §8 Par. 3:  To regulate commerce with foreign nations, and among the several states, and with the Indian tribes;

> Art. 1 §9 Par. 7:  No money shall be drawn from the Treasury, but in consequence of appropriations made by law; and a regular statement and account of the receipts and expenditures of all public money shall be published from time to time.

> Art. 6 Par. 2:  This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, and anything in the Constitution or laws of any state to the contrary notwithstanding.

In *McCulloch v. Maryland*, 17 U.S. (4 Wheat.)  316, 4 L. Ed. 579 (1819), the members of

the 1819 Supreme Court reviewed the just-quoted constitutional provisions and then penned the

following bedrock principle of our Republic:

> The Court has bestowed on this subject its most deliberate consideration.  The result is a conviction that **the states have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the Constitutional laws enacted by Congress to carry into execution the powers invested in the general government**.  This is, we think, the unavoidable consequence of that supremacy which the Constitution has declared.  We are unanimously of opinion that the law passed by the legislature of Maryland, imposing a tax on the bank of the United States is unconstitutional and void. (emphasis added)  *Id*. at 435.

To allow the state law claims at issue in this matter to proceed, with all respect, would be

to violate *McCulloch*.[7]  Any such ruling would necessarily allow a State to regulate <u>and</u> burden

---

[7] Defendant readily acknowledges that the scope of *McCulloch* has been confined over the last 200 years.  However, this case involves <u>direct</u> disbursements of U.S. Treasury funds, and at no

and control "the operations of the constitutional laws enacted by Congress." *Id*. As per the U.S. Congress, only FEMA may make *regulatory* decisions regarding NFIP claims. See 42 U.S.C. §4019, and *West v. Harris*, 573 F.2d 873 (5th Cir. 1978), *cert. denied*, 99 S.Ct. 1424 (1979). Thus, as per Congress and the U.S. Constitution, there is no role for the States in the context of U.S. Treasury-financed NFIP claims adjustment.

In short, and even beyond the constitutional impediments, State regulation of SFIP claims (or SFIP claims adjustment) would (1) destroy uniformity of decision, (2) violate Congress' express dictates for how the Program shall be run, and eventually, (3) risk congressional repeal of the Program itself.[8]

In *Gowland, supra*, the U.S. Fifth Circuit directly held that "the provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced." 143 F.3d at 954. The U.S. Ninth Circuit, in *Wagner v. Director, FEMA*, 847 F.2d 515, 518 (9th Cir. 1988), likewise held that, "the conditions of an insurance policy offered pursuant to a congressionally mandated program, such as the NFIP, must be strictly observed." See also, *Mancini, supra*. The reason **why** FEMA regulations and the Policy's provisions must be "strictly construed and enforced," is **constitutional**, as all payments are a "direct charge on the public treasury." *Gowland,* 143 F.3d at 953.

In this regard, it is respectfully requested that this Honorable Court review the Supreme Court's decisions in *Federal Crop Ins. Corp. v. Merrill*, 68 S.Ct. 1 (1947)("*Merrill*"), and *Office of Personnel Management v. Richmond*, 110 S.Ct. 2465 (1990)("*Richmond*"). Courts have

---

time has the Supreme Court read *McCulloch* to not preclude state regulation of direct federal payments.

[8] 42 U.S.C. §4017(f).

repeatedly held that these Supreme Court precedents govern analysis of claims such as those raised at bar, when brought in the context of the NFIP.[9]  The following passages are directly relevant to, and are controlling authority in the current situation.  First, in *Merrill*, is found the following:

> If the Federal Crop Insurance Act had by explicit language prohibited the insurance of spring wheat which is reseeded on winter wheat acreage, the ignorance of such a restriction, either by the respondents or the Corporation's agent, would be immaterial and recovery could not be had against the Corporation for loss of such reseeded wheat.  Congress could hardly define the multitudinous details appropriate for the business of crop insurance when the Government entered it.  Inevitably 'the terms and conditions' upon which valid governmental insurance can be had must be defined by the agency acting for the Government.  And so Congress has legislated in this instance, **as in modern regulatory enactments it so often does by conferring the rule-making power upon the agency created for carrying out its policy**.  See §1516(b), 52 Stat. 72, 77, 7 U.S.C.A. §1516(b).  Just as everyone is charged with the knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents.

> Accordingly, the Wheat Crop Insurance Regulations were binding on all who sought to come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the Regulations or of the hardship resulting from innocent ignorance.  The oft-quoted observation in *Rock Island, Arkansas & Louisiana R. Co. v. U.S.,* 254 U.S. 141, 143, 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920), that 'Men must turn square corners when they deal with the Government,' does not reflect a callous outlook.  **It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury.** (emphasis added)  *Id*. at 3. [10]

Second, *Richmond,* which explained the Constitutional underpinnings of the *Merrill* doctrine, includes these points:

> We hold that payments of money from the Federal Treasury are limited to those authorized by statute, and we reverse the contrary holding of the Court of Appeals.  *Id*. at 2465.

---

[9] *Gowland*, *supra*; *Foreman*, *supra*; *Flick, supra*, *Penny v. Giuffrida*, 897 F.2d 1543 (10th Cir. 1990); *Wagner*, *supra*; *Phelps v. FEMA*, 785 F.2d 13 (1st Cir. 1986).

[10]  Given that such a duty binds this Court, it certainly binds Selective.

*   *   *

Our cases underscore the straight forward and explicit command of the Appropriations Clause.  "It means simply that no money can be paid out of the Treasury unless is has been appropriated by an act of Congress."  *Id*. at 2471.

*   *   *

But the Clause has a more fundamental and comprehensive purpose, of direct relevance to the case before us.  It is to assure that public funds will be spent according to the letter of the difficult judgments reached by Congress as to the common good and not according to the individual favor of government agents or the individual pleas of litigants.  *Id*. at 2473.

*   *   *

Even if most claims were rejected in the end, the burden of defending such estoppel claims would itself be substantial.  *Id*. at 2476.

*   *   *

The rationale of the Appropriations Clause is that if individual hardships are to be remedied by payment of Government funds, it must be at the instance of Congress. *Id*. at 2476.

In light of *Merrill* and *Richmond*, the following is clear:  First, Congress underwrites <u>all</u>

operations of the NFIP, including <u>both</u> claims adjustment and payment, through the U.S.

Treasury.[11]  Second, Congress has conferred "rule-making power upon the agency created for

carrying out its policy," in this case, FEMA.[12]  Third, Congress statutorily authorized FEMA to

enter into "Arrangements" with private insurance companies, who operate with a federal

checkbook as the "fiscal agent" of the United States.[13]  Under the "Arrangement" established by

FEMA with congressional authorization, all payments made under an NFIP claim are "binding"

---

[11]  42 U.S.C. §4017(d)(1).

[12]  42 U.S.C. §§4013, 4017, 4019; *FCIC v. Merrill, supra*.

[13]  42 U.S.C. §4071(a)(1).

upon the FIA.[14]  This includes defense costs.[15]   Accordingly, it is irrefutable that *everything* involved in this case is occurring at Federal Government expense and at Federal Government risk.

## II.    Traditional Preemption Analysis

Selective respectfully submits that it is constitutionally impermissible for a court to subject the "fiscal agent" of the National Government to regulation by the States.  The premise of this reasoning has been set forth in detail in the prior section of this memorandum which discusses *FCIC v. Merrill, OPM v. Richmond,* and *McCulloch v. Maryland*.  Under each of those authorities, it is Selective's contention that application of state law to NFIP disputes is unconstitutional as such would violate the *Appropriations* Clause of the U.S. Constitution. However, even if this Honorable Court were to hold that the States did have the power to constitutionally regulate these operations of WYO Program carriers, the extra-contractual claims at bar still could not proceed.  These claims are indeed preempted as per the *Supremacy* Clause of the U.S. Constitution.

Traditionally, the jurisprudential doctrine of preemption is examined in three different ways.  First, the Court considers whether there is "express preemption," whereby Congress or the applicable federal regulation expressly preempts a given field.   Second, there can be "field preemption," wherein federal regulation of a given field is so pervasive, so as to displace and preempt state law. Third, there can be "conflict preemption," wherein application of state regulation would constitute an impediment to congressional intent for the federal legislation at issue.  Application of each of these three modes of inquiry to the subject at hand is as follows:

---

[14] 44 C.F.R. §62.23(i)(l) and (6), and App. A, Art. IIF. And Art. IIIC.

[15]  44 C.F.R. §62.23(i)(6) and (9).

### A.    Express Preemption

Selective asserts that FEMA added an express preemption clause to the policy in 1982.

Said provision states as follows:

> Article IX — What Law Governs
>
> This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001, *et seq.*) and Federal common law.  44 C.F.R. Pt. 61, App. A(1), Art. IX.

That express preemption was indeed the intent of the 1982 rules change wherein this provision was adopted and was recently made manifest by FEMA's recent effort to "clarify" and "emphasize" the import and effect of the existing rule. See 65 F.R. 34824, 34826-27, 34835 and 34838 (proposed rules, now final, took effect December 31, 2000).  Accordingly, it is prayed that the Court will see the current Article IX of the SFIP for exactly what it is – namely an express preemptive provision declaring that federal law, not state law, is controlling.

Even if the Court concludes that FEMA's efforts were somehow <u>still</u> insufficient, this one point would still not be determinative.  As the Supreme Court noted in *Barnett Bank*, in most cases where preemption is found, there is no express preemption provision *at all*:

> **Sometimes** Courts, when facing the preemption question, find language in the federal statute that reveals an explicit Congressional intent to pre-empt state law. [case cite omitted] **More often**, explicit preemption language does not appear, or does  not directly answer the question. (emphasis added)  *Barnett Bank,* 517 U.S. at 31.

As per Congress' statutory enactment at 42 U.S.C. §4019, and as per the just-quoted FEMA rules enacted pursuant to said statutory authority, the Federal Government has <u>expressly</u> preempted the field as to NFIP claims handling.

### B.    Field Preemption

As explained in *Texas Landowners Rights Assoc. v. Harris* 453 F. Supp. 1025, 1030 (D.C. 1978), *aff'd*, 598 F.2d 311 (D.C. Cir. 1979), *cert. denied*, 100 S.Ct. 267 (1979), the NFIA is a "carrot and a stick" federal program.  It is a mix of federal insurance <u>and</u> federal zoning designed to reduce the overall cost *to the National Government* of disaster relief.  Thus, viewed in its proper light, that being reduction of disaster relief costs to the federal treasury, there is no state regulation which applies, or which could possibly apply.[16]  Over twenty years ago, the original U.S. Fifth Circuit noted the following about this "child of Congress" and its applicable regulations, which remains true today:

> Congress has undertaken to regulate the claims adjustment process and judicial review thereof, and nowhere in these statutory sections or in the regulations implementing them, 24 C.F.R. §1912.21, 1912.22 (1977), is there any mention of use of the statutory law of the forum state on any issue.  *West, supra*, 573 F.2d at 880.

Notably, the U.S. Ninth Circuit in *Flick* quoted from the same section of *West* from which the above-quoted passage was taken, in analyzing which law (federal or state) governs NFIP claims analysis.  *Flick, supra*.   An example of a court finding preemption on the basis of field preemption analysis is *Messa v. Omaha Property and Casualty*, 122 F.Supp.2d 513 (D. N.J. 2000)[17] and *3608 Sounds Ave., supra*.

### C.    Conflict Preemption

It is within this test that the need for preemption becomes most apparent.  In this regard, the Court is asked to consider (1) the profit-based motives of insurance companies that the various States' bad faith statutes are designed to regulate, and (2) the stark differences between

---

[16]  Please recall *McCulloch v. Maryland, supra*.

[17]  This decision was recently affirmed by the U.S. Third Circuit Court of Appeals in an unpublished memorandum opinion which is attached hereto as Exhibit 3.

how normal insurance claims are analyzed and how SFIP claims are analyzed.  With regard to these two points, please note the following:

In normal private lines of insurance, if an insurer fails to pay a claim that is properly owed, the insurer profits from the retention of funds that otherwise would have been used to pay the claim.  The situation in which an insurer benefits financially from the inappropriate denial or delay in payment of valid claims is exactly the situation that the various States' bad faith claims statutes seek to regulate.

However, in the context of the NFIA, WYO Program carriers have no risk whatsoever, and act merely as the "fiduciary" and/or "fiscal agent" of the United States.  See 42 U.S.C. §4071 A(1), and 44 C.F.R. §62.23(f).  Notably, the entire "Arrangement" between FEMA and the WYO Program carriers may be found in its entirety at 44 C.F.R. Pt. 62, App. A.  That "Arrangement" specifically delineates that WYO Program carriers are paid a 3.3% commission on all claims payments, and that all claims payments are "binding" upon the FIA.[18]  Accordingly, and has been uniformly held by the Courts, the WYO carrier makes its profit ***by paying a claim***, not by resisting it.  As was recognized by the U.S. Ninth Circuit in *Flick*:

> Under the NFIP regulations, WYO insurers also pay claims out of the National Flood Insurance Fund.  The federal government is a guarantor and assumes full liability for flood insurance policies that are issued by WYO insurers.  See 44 C.F.R. §62.23(f); 64 Fed. Reg. 27705, 27708 (1999)(stating that WYO insurers "do not have to pay for reinsurance for their flood business since the federal government assumes the liability for flood losses.") *Flick*, 205 F.3d at 392.

In short, <u>if</u> the various States' bad faith claims statutes designed to prevent inappropriate profits are imposed upon FEMA's WYO Program carriers who make their profit by paying claims, then

---

[18] 44 C.F.R. Pt. 62.23(i)(1) and (6), and App. A, Art. IIF and Art. IIIC.

such a result would impede FEMA's ability to cause WYO carriers to <u>only</u> make that profit which is properly attainable through strict enforcement of FIA regulations.

Second, and returning to the issue of the standard governing claims review, please consider the normal standard pursuant to which insurance companies analyze claims with regard to their private lines of insurance, as opposed to how WYO Program carriers are <u>required</u> to analyze SFIP claims.

In private lines insurance in most States, doctrines such as "reasonable expectations" and "notice/prejudice" and "substantial compliance" govern claims evaluation.[19]   In contrast, and again as held by the U.S. Ninth Circuit in *Flick*, none of these state law standards are relevant to NFIP claims analysis.  See also, *Gowland, supra*.  Prejudice to the carrier is not a factor as a matter of law.  *Mancini, supra*.  Accordingly, and as per the logic of *Flick, Gowland*, and *Mancini*, a WYO Program carrier <u>cannot</u> protect itself from liability under state law for its decision to respect federal law which requires that it "strictly construe and enforce" federal regulations.  In strictly construing and enforcing federal regulations, the carrier <u>necessarily</u> violates the state law rules of reasonable expectations, substantial compliance and notice/prejudice.  Thus, once again, application of both systems to the WYO carriers' decisions would impede FEMA's ability to regulate the decisions of its WYO Program carriers.   This is exactly the point that FEMA stressed repeatedly in its *amicus curiae* brief in *Van Holt*.  See also *Novikov v. Allstate,* 2001 WL 880852 (E.D. Ca. 2001).

The proverbial "bottom line" is this: If this Honorable Court holds that the laws and regulations of the various States can be imposed upon WYO Program carriers to regulate <u>how</u>

---

[19]  Under such standards, a carrier <u>rarely</u> enforces its proof of loss requirement.   However, even such a cursory review of NFIP caselaw shows that just the opposite mode of procedure occurs in NFIP claims litigation.

NFIP contracts, i.e., the SFIP, are handled, then FEMA would lose its ability to control federal disbursements by the WYO Program carriers.  If this Honorable Court issues such a ruling, then thereafter, the WYO Program carriers would be forced to protect themselves from state-law-based extra-contractual bad faith claims judgments by paying SFIP claims *beyond* the strict dictates of NFIP regulations.  In this regard, even if the Court would disagree that the WYO carriers would literally be "forced" to make such additional payments, it remains irrefutable that such a holding by this Honorable Court would *cause* many carriers to make inappropriate claims payments to avoid extra-contractual liability, thereby making FEMA's job far more difficult, and obviously increasing Program costs.[20]    Please note that Judge McLaughlin in *Neill, supra*, applied this same reasoning to dismiss all extra-contractual state-law causes of action relating to claims handling under the NFIA.  See also, *Scherz v. South Carolina Ins. Co.*, 112 F.Supp.2d 1000 (C.D.Cal. 2000).  Accordingly, when the issue of preemption is properly analyzed, it becomes apparent why the vast majority of courts to have considered the issue have held for 20 years that the NFIA preempts the various States' bad faith statutory schemes.  (See Exhibit 1, List of cases holding state-law-based claims are preempted.)

## III.    Dismissal Is Proper Procedure to Dispose of Individual Claims

Under Rule 12(f) of the Federal Rules of Civil Procedure, a motion to strike will be granted if a pleading contains any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. *Friedman, supra*; *Drewett, supra*.  However, if such motions to strike are directed toward specific theories of recovery that constitute neither an insufficient defense nor a redundant, immaterial, impertinent, or scandalous allegation, a motion to strike is inappropriate.

---

[20] Thereby violating both the Appropriations Clause <u>and</u> the Separations of Powers Doctrine.

The subject matter of a motion to remove inappropriate theories of recovery from a case may properly be presented to the Court by means of a motion to dismiss for failure to state a claim upon which relief can be granted. FRCP 12(b)(6). *Id.*; Wright & Miller, *Federal Practice and Procedure*, §1380. This motion may be used to challenge the sufficiency of part of a pleading such as a single count or claim for relief. *Id.*; Wright & Miller, *Federal Practice and Procedure*, §1358. Furthermore, the Court, in ruling on such motion, will only dismiss a claim if it appears beyond doubt that the plaintiffs can prove no set of facts that would entitle them to relief. *Conley v. Gibson*, 78 S.Ct. 99 (1957). Therefore, it must be demonstrated beyond doubt that there is no set of facts that would entitle the Plaintiff to proceed with such theories of recovery before the Court will dismiss the enumerated claims. *Friedman, supra*, 855 F.Supp. at 350.

In the present matter, Plaintiff has not pled any set of facts that would entitle her to damages for bad faith under 42 Pa.C.S.A. §8371, unfair or deceptive acts or practices under the Unfair Trade Practices and Consumer Protection Law under 73 Pa.C.S.A. §201-1, *et seq.*, Unfair Insurance Practices Act under 40 Pa.C.S.A. §1171.1, *et seq.*, breach of fiduciary duty, breach of the duty of good faith and fair dealing, fraud – intentional misrepresentation regarding the nature and scope of the claims handling procedures, fraud – negligent misrepresentation regarding the nature and scope of the claims handling procedures, punitive damages, interest and attorney's fees, as a result of Selective's decision to resist her claim. Accordingly, Selective submits this Fed.R.Civ.P. 12(b)(6) and 12(c) Motion to Dismiss and asserts to this Honorable Court that Plaintiff has not presented any claims upon which relief can be granted, and, as such, said claims should be dismissed, thereby leaving only the breach of contract claim to proceed.

## CONCLUSION

As explained herein, Selective has absolutely no motive to deny payment on a flood claim, other than fidelity to the dictates of a government-underwritten program.  Further, based on the arguments presented herein, Selective contends that under clearly established jurisprudence, the Plaintiff's state-law-based extra-contractual claims are preempted and barred by federal constitutional, statutory and regulatory law.  Accordingly, Defendant submits this Rule 12(b)(6) and 12(c) Motion to Dismiss and asserts to this Honorable Court that, with regard to Plaintiff's state-law-based extra-contractual claims, said claims do not present a claim upon which relief can be granted.  As such, Defendant prays that this Honorable Court will grant this Motion to Dismiss, thereby leaving only the breach of contract action against Selective to proceed.

Respectfully submitted,

_____
DANIEL KREBBS
MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN
1845 Walnut St., 21st Fl.
Philadelphia, Pennsylvania 19103
Telephone: 215-575-2793
Local Counsel for Defendant,
Selective Insurance Company, Inc.

NIELSEN LAW FIRM, LLC
Gerald J. Nielsen  La.S.B. # 17078
Attorney-in-Charge
The Pelican Building
2121 Airline Drive, Suite 200
Metairie, Louisiana 70001
(504) 837-2500
(504) 832-9165 FAX

Date:

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the above and foregoing pleading has been served on Plaintiff's counsel, Patrick G. Murphy, Esq., Kelley and Murphy, Union Meeting Corporate Center V, 925 Harvest Drive, Suite 160, Blue Bell, Pennsylvania 19422.


_____
DANIEL D. KREBBS, ESQUIRE


Done, this _____ day of November, 2002