UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARIA DEVERANT | : | |
| 1036 Limekiln Pike | : | CIVIL ACTION NO. 02-CV-3801 |
| Maple Glen, Pennsylvania 19002 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| versus | : | |
| | : | |
| SELECTIVE INSURANCE COMPANY | : | |
| INC. | : | |
| 40 Wantage Avenue | : | |
| Branchville, New Jersey 07890 | : | |
| | : | |
| Defendant. | : | |

**REPLY MEMORANDUM IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS**

MAY IT PLEASE THE COURT:

Defendant, Selective Insurance Company, respectfully submits the following Reply to Plaintiff's Opposition to the Defendant's Rule 12(b)(6) Motion to Dismiss. For the reasons to be assigned herein, Defendant submits that Plaintiff has failed to set forth any claims upon which relief may be granted by this Honorable Court, and that this case should be dismissed.

**I. PROCEDURAL CIRCUMSTANCE**

On January 7, 2003, this Honorable Court held that Plaintiff had not filed a timely, complete, and sworn proof of loss as required by the federal regulations governing payment of U.S. Treasury funds under a SFIP. Now, Plaintiff seeks to claim that they can state a claim for the exact same amounts that they would have obtained under their policy claim, through tort-based claims as set forth in the Amended Complaint Plaintiff filed on January 27, 2003.

In response to the Plaintiff's Amended Complaint, Defendant filed a Rule 12(b)(6) Motion to Dismiss on March 5, 2003. Plaintiff then timely filed her Opposition to that Motion.

1

On April 8, 2003, and at a conference with counsel, this Honorable Court instructed that Defendant's Reply Memorandum be filed on April 14, 2003, and that the Plaintiff's sur-reply be filed shortly thereafter.  Once all briefs are in, it is anticipated that the Court will schedule oral argument.

As an initial point, discussions at the April 8, 2003 conference included a query from the Court as to whether Defendant's position based upon a litigation manual and declaration from FEMA might be in violation of the tenets of *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803).  Defendant will not avoid addressing that question herein.  Rather, through reliance upon five different Supreme Court precedents, Defendant will explain why the positions advanced in the FEMA declaration and manual are to be given "controlling weight," and are with all respect "binding" upon this Honorable Court.

Each of the points addressed in the Plaintiff's Opposition Memorandum will be addressed herein.  However, as Defendant's first presentation, it will apprise the Court that it has a total of *four* different options as to analytical paths it could take in reviewing this matter.  Plaintiff is relying exclusively upon the path the Fifth Circuit took in *Spence v. Omaha*, 996 F.2d 793 (5th Cir. 1993).  However, there are distinct paths upon these exact questions available for the Court's consideration from (1) the U.S. Supreme Court, (2) the U.S. Eleventh Circuit, (3) the U.S. Sixth Circuit, and (4) the Fifth Circuit, that being the *Spence* decision.  Defendant will explain herein that the paths taken by the Supreme Court, the Eleventh Circuit, and the Sixth Circuit all lead to a rejection of the Plaintiff's Amended Complaint.  In addition, and as alluded to earlier, the path taken by the Fifth Circuit ten years ago in *Spence*, is no longer an available option.

## II.  FOUR ANALYTICAL PATHS

The essence of the Plaintiff's claim is that even though the Plaintiff failed in the

Plaintiff's duty to provide a proof of loss in support of the claim for benefits under the SFIP, that Plaintiff possesses a cause of action that could succeed in tort based upon oral representations made by a "sales agent" at the time the policy was sold, and seemingly also by an independent adjuster during claims handling.[1]  With regard to these claims of the Plaintiff, the Court is now asked by Defendant to examine how indistinguishable claims have been resolved in the past.

**1) *Heckler v. Community Health Services,* 104 S.Ct. 2218 (1984)**

In *Heckler*, a participant in a federal program received bad advice as to how the program worked, and as to how much money was owed to that participant under the said program.  The Government sued the participant for reimbursement of the overpayment.  In response, the participant contended that the Government was estopped to recoup the monies based upon the misrepresentation made by the Government's fiscal agent.  The Court rejected the argument, holding that it would not succeed even against a private defendant.  Set forth below is a series of eight points concerning *Heckler* that demonstrate the uncanny resemblance of *Heckler* to the matter at bar.  Based upon *Heckler*, the Plaintiff's claims against Selective at bar are impossible of success:

1.  The plaintiff in *Heckler* elected to receive advice and services in the context of a federal program through a "fiscal intermediary."  *Id*. at 2221.  The situation is indistinguishable from the flood program, wherein participants may either buy their flood insurance policies from FEMA directly, or may opt to purchase the exact same policy through a FEMA "fiscal agent," that being a WYO Program carrier.  In *Heckler*, the "fiscal intermediary" was Travelers.

2.  Said private company fiscal intermediary, that being Travelers, gave bad advice upon

---

[1] Defendant presumes the Court will agree that Plaintiff's claims as to claims handling cannot succeed because the Court has already dismissed these in the Order of January 7, 2003 based

3

which the plaintiff had indeed relied.  *Id*. at 2221-23.  In *Heckler*, the Court did not dispute in any way that bad advice had been given, or that it had been relied upon.  The question before the Court in *Heckler* was (1) whether this reliance was justified and/or reasonable, and (2) whether said reliance had actually caused the plaintiff any actual damages.

3.    The subject of the said bad advice was the workings of a series of complicated regulations concerning reimbursement under the program at issue.  Just as in the case at bar, the advice concerned interpretation of federal regulations.  The plaintiff at bar is asserting that the "sales agent" misinformed her as to the scope of what coverage would be owed under the SFIP, and that the adjuster misrepresented the procedures for how a claim was to be presented.  In the federal program at bar, the scope of coverage is laid out by Congressional authority as a federal regulation in the SFIP, which is found at 44 C.F.R. Pt. 61, App. A.  42 U.S.C. §§4013 and 4019.  At Article IX thereof, all procedures for the making of a claim are also set forth.  As was explained in *Mancini v. Redland*, 248 F.3d 729 (8th Cir. 2001), "The policy the Mancinis bought is more than a contract: it is also a regulation of the Federal Emergency Management Agency, stating the conditions under which federal flood-insurance funds may be disbursed to eligible policyholders." *Id*. at 733.  *Heckler* and the situation at bar are not distinguishable.

4.    In *Heckler*, the plaintiff sought to retain monies that it would not have been entitled to have received in the first place, had no erroneous advice been given.  *Id*. at 2224-25.  The situation at bar is no different.  The regulations describe the scope of coverage, and the regulations set forth the procedure for the making of a claim.  Also, and as was briefed extensively in the Motions already ruled upon by the Court, FEMA has directly barred all arguments that it was an adjuster's fault that a claim did not get paid.  44 C.F.R. Pt. 61, App. A,

---

upon (1) preemption, and (2) Plaintiff's lack of opposition.

Art. IXJ(6).  All problems of these sorts are to be resolved, if at all, through application for a

waiver submitted to FEMA, not the courts.  *Flick v. Liberty Mutual*, 205 F.3d 386, 396 (9th Cir.

2000).

5.  In *Heckler*, the Court squarely held that, "As a participant in the Medicare program,

respondent had a duty to familiarize itself with the legal requirements for cost reimbursement."

*Id*. at 2225-26.  Notably, the Court made this holding in the context of a case involving a "fiscal

intermediary," and made this holding after noting its long-held rule upon this exact topic:

> Justice Holmes wrote: "Men must turn square corners when they deal with the
> Government."  *Rock Island, A. and L. R. Co. v. United States*, 254 U.S. 141, 143,
> 41 S.Ct. 55, 56, 65 L.Ed. 188 (1920).  This observation has its greatest force when
> a private party seeks to spend the Government's money.  Protection of the public
> fisc requires that those who seek public funds act with scrupulous regard for the
> requirements of law; **respondent could expect no less than to be held to the
> most demanding standards in its quest for public funds.  This is consistent
> with the general rule that those who deal with the Government are expected
> to know the law and may not rely on the conduct of Government agents
> contrary to law**." *Id*. at 2225.

To be clear, Defendant is adamant that no such misrepresentations <u>ever</u> occurred.  The

best "evidence" of this at this juncture is that even in the face of a Motion to Dismiss, Plaintiff is

both unwilling and unable to provide this Court any indication of what the actual misstatements

were.  All that is provided is puffery.  At bottom, and just as in *Heckler*, the Plaintiff at bar

participated in the NFIP under a legal duty to familiarize herself with its legal requirements.

6.  As in *Heckler*, the alleged bad advice at bar was allegedly given "orally."  As to this

point, the *Heckler* Court held as follows:

> [8] The appropriateness of respondent's reliance is further undermined
> because the advice it received from Travelers was oral.  It is not merely the
> possibility of fraud that undermines our confidence in the reliability of official
> action that is not confirmed or evidenced by a written instrument.  Written advice,
> like a written judicial opinion, requires it author to reflect about the nature of the
> advice that is given to the citizen, and subjects that advice to the possibility of

> review, criticism, and reexamination.   The necessity for ensuring that
> governmental agents stay within the lawful scope of their authority, and that those
> who seek public funds act with scrupulous exactitude, argues strongly for the
> conclusion that an estoppel cannot be erected on the basis of the oral advice that
> underlay respondent's cost reports.   That is especially true when a complex
> program such as Medicare is involved, in which the need for written records is
> manifest.  *Id*. at 2226-27.

Selective knows of no basis for not employing this holding with full force in the context of the

NFIP.  The NFIP is no more or less complicated than Medicare.  This point can be established by

the number of recent U.S. appellate court decisions that have had to be rewritten on rehearing

based upon submissions from the U.S. Department of Justice Civil Appellate Staff after the

writing and publishing of original opinions.  See, e.g., *Van Holt v. Liberty Mutual,* 163 F.3d 161

(3rd Cir. 1998)(on rehearing); *Newton v. Capital Assur. Co.,*  245 F3d 1306 (11th Cir. 2001) (on

rehearing); and *McHugh v. U.S.A.A.,* 164 F.3d 451 (9th Cir. 1999) (on rehearing).

　　7. Because the participant in a federal program is legally charged with knowledge of the

regulations of the program, that participant cannot claim that they did not know of the

regulations.  Knowing the regulations, one cannot claim that they relied upon an oral statement

that the regulations were other than what they were.  It was precisely on this exact point that the

*Heckler* Court reached its decision.  Moreover, and as the following passage indicates, this

holding would apply with full force against a "private party" involved in the same circumstance:

> In sum, the regulations governing the cost reimbursement provisions of Medicare
> should and did put respondent **on ample notice** of the care with which its cost
> reports must be prepared, and the care which would be taken to review them
> within the relevant three-year period.  Yet respondent prepared those reports on
> the basis of an oral policy judgment by an official who, it should have known,
> was not in the business of making policy.  **That is not the kind of reasonable
> reliance that would even give rise to an estoppel against a private party.**  It
> therefore cannot estop the Government.  (emphasis added) *Id*. at 2227.

　　At bar, the Plaintiff must be charged by this Honorable Court with knowledge of the

scope of coverage afforded by the SFIP, as well as with the rules contained therein for how a claim for benefits is to be presented thereunder. *Id*. Those rules include a rule specific to the matter at hand, which specifically bars any claim that it is the adjuster's fault that a claim was not paid. 44 C.F.R. Pt. 61, App. A, Art. 9J.7. In addition, the rules contained both in the policy and in the regulations prevent waivers of any rules. *Id.* at Art. 9D, and Pt. 61.13(d). Also, there is a regulation that expressly precludes oral binders. *Id.* at Pt. 61.13(e). Based upon all of these regulations, and based upon *Heckler*, and given that the Plaintiff's claims at present are all necessarily predicated upon a claim of justifiable and reasonable reliance upon oral representations, *Heckler* stands for the proposition that these claims cannot succeed.

**2)  *Garcia v. Omaha,* 933 F.Supp 1064 (S.D.Fla. 1995), *aff'd* 95 F.3d 58 (11th Cir. 1995)**

Two years after *Spence* was decided in 1993, the states governed by the Eleventh Circuit became governed by a very different rule than what was announced in *Spence*. In *Spence*, the court held that one could indeed successfully pursue a misrepresentation claim as to the scope of benefits available under the National Flood Insurance Program. In *Garcia*, the district could held that such was impossible. The Eleventh Circuit affirmed. The analysis of this exact point, as found in *Garcia*, is as follows:

Claims arising from agent's conduct:

[5] In addition to his declaratory judgment and breach of contract claims, Garcia asserts two claims arising from Tanenbaum's allegedly negligent role in the procurement of the flood insurance policy. Garcia seeks to hold Tanebaum liable for negligent representations and omissions. Garcia also claims that Omaha is liable for the negligence of its agent, Tanenbaum.[2] The Court has determined that no additional coverage is available for the first level of Garcia's townhouse under the clear guidelines of the National Flood Insurance Program and pertinent regulations. Moreover, the only source of flood insurance is the National Flood

---

[2] Undersigned counsel would submit that it is highly likely that this claim was made based in large part upon *Spence*.

Insurance Program, which prescribes the coverage available either directly from the Government or through "Write-Your-Own" private insurers. Because Garcia could not have obtained additional flood coverage for the first level, regardless of Tanenbaum's conduct, Garcia's loss could not have been caused by the alleged negligence of Tanenbaum. Therefore, Garcia's claims against Omaha and Tanenbaum, which are predicated on Tanenbaum's alleged negligence **fail due to the absence of causation.** (emphasis added) *Id.* at 1070

In the matter at bar, there is no allegation in the Amended Complaint that explains how the Plaintiff was actually caused damages. There was no other flood insurance policy available to the Plaintiff. Congress expressly found this to be the case when it enacted the NFIP, and this fact is <u>why</u> Congress enacted the legislation, and continues to have backed it for the last 30 or more years. 42 U.S.C. §4001. As such, Plaintiff's Amended Complaint is dismissible for the exact same reason the same types of claims were dismissed in *Garcia*.

**3) *Neuser v. Hocker-Frick*, 246 F.3d 508 (6th Cir. 2001)**

In *Neuser*, the original plaintiff (the insured) alleged in a claim against his own independent insurance agent, that the agent had negligently advised the insured as to how a claim under the flood program should be handled. The agent in turn filed a third-party claim against the WYO carrier asserting that the carrier was negligent in failing to tell the agent of the information in question. The subject of the advise concerned a particular provision of the Act known as the "Upton-Jones Amendment," and specifically the time-frame within which claims could be made under that aspect of the program once Congress repealed it. *Id.* at 509. The original plaintiff's claim against the agent was settled by the agent. However, the agent pursued its claim against the carrier to judgment. Said third-party claim was dismissed by the district court, and this judgment was affirmed on appeal.

The crux of the Sixth Circuit ruling in *Neuser* was that the plaintiff had not filed a proof of loss, and so had not preserved the claim. Also, it was clear in *Neuser* that the carrier, as

8

distinct from the agent, was not responsible for the failure to comply with the 60-day proof of loss requirement. *Id*. at 512. As such, there was no viable claim for damages that the third-party agent could bring against Auto-Owners.

**4) *Spence v. Omaha,* 996 F.2d 793 (5th Cir. 1993)**

In 1993, the U.S. Fifth Circuit in *Spence* held that a misrepresentation as to the scope if benefits available under a SFIP could succeed under Texas state law. A key to this holding was the Fifth Circuit's review of the then-existent FEMA regulations. The following quotation from *Spence*, which is the exact same quotation found at page 8 of the Plaintiff's Response to the Motion to Dismiss irrefutably evidences that the *Spence* court was basing its decision upon its evaluation of FEMA's regulations, <u>and</u>, the court's perception of FEMA's intentions behind those regulations:

> FEMA regulations disclaiming any agency relationship with WYO companies, as well as the terms of the FEMA-WYO agreement, more indicate intent to leave those insurers responsible for their own tortious conduct . . . we decline to accept a reading of that provision immunizing WYO companies from liability for the tortious conduct of their agents. *Spence, supra,* 996 F.2d 793, 797 (5th Cir. 1993)

The problems facing the claim of the Plaintiff at bar that this Court should validate *Spence* in the matter at bar, are multiple. First, the initial point in the quote above about there not being "any" agency relationship between FEMA and the carriers, has been rejected by both the Fifth Circuit and the Third Circuit. In *Gowland v. Aetna*, 143 F.3d 951 (5th Cir. 1998), the Fifth Circuit recognized that the carriers are the "fiscal agent" of the United States. *Id*. at 953. In *Van Holt v. Liberty Mutual Insurance Co.,* 163 F.3d 161 (3rd Cir. 1998) (on panel rehearing), the Third Circuit recognized the same thing. *Id*. at 165. Accordingly, the broad-based statement on which *Spence* is based is no longer recognized to be correct.

Second, this Honorable Court may check the relevant portions of the Code of Federal

9

Regulations, that being Article IIID of the Arrangement between FEMA and the carriers, to see that the regulations as they existed ten years ago have been changed since *Spence* was decided. As is explained in FEMA's declaration that is attached to Defendant's Motion to Dismiss, FEMA subsequently changed its regulations specifically to evidence that the Fifth Circuit had misperceived FEMA's "intent."   Accordingly, where the Fifth Circuit has based its holding on regulations that it perceived "indicate intent" to not reimburse carriers for the types of exposures at issue in *Spence*, FEMA has directly disagreed.   The serious problem confronting this Honorable Court then, is what "weight" is it to give either *Spence* or the FEMA declaration.[3]  As to that point, Defendant submits the following explanation of a line of five different United States Supreme Court decisions, all of which clearly stand for the proposition that the FEMA declaration is literally "binding" upon this Honorable Court, and that the *Spence* decision in no longer to be cited as authority for how FEMA's regulations are to be interpreted.

### III.  AGENCY CONSTRUCTION OF AGENCY REGULATIONS

In the Plaintiff's Response to Defendant's Motion to Dismiss, Plaintiff is completely silent as to the FEMA's litigation manual and declaration.   Curiously, Plaintiff's Amended Complaint is obviously predicated upon the notion that it is seeking monies from Selective that the Federal Government would supposedly not pay, and Plaintiff's Opposition Memorandum at page 8 expressly asks this Honorable Court to interpret FEMA regulations upon the exact same topics necessarily put at issue by the Plaintiff's amended pleading.   Nevertheless, Plaintiff obviously hopes that this Honorable Court will merely ignore FEMA's position upon these issues.

---

[3] Notably, the problem is avoided if this Court follows *Heckler* and *Garcia*.  Since Selective cannot assume the Court would take the *Heckler*/*Garcia* path, further analysis is provided.

The question arose at the Court conference of April 8, 2003 as to what deference this Honorable Court should properly give to the FEMA declaration and manual.  The following discussion is upon that exact topic.  Defendant begins with the U.S. Supreme Court's decision in *Stinson v. U.S.*, 112 S.Ct. 1913 (1993).   While *Stinson* is a criminal case, and involves construction of commentary to sentencing guidelines, it is cited because (1) it constitutes a reversal of a U.S. appellate court that had held that prior decisions of that circuit were binding instead of "commentary" from the U.S. Sentencing Commission; (2) because of a detailed description contained within *Stinson* concerning the difference between what deference is owed between agency constructions of a statue, and agency constructions of a regulation; and (3) because *Stinson* relies upon five U.S. Supreme Court cases that are all civil matters.  The issue in *Stinson*, as described by the Supreme Court was as follows:

> In this case we review a decision of the Court of Appeals for the Eleventh Circuit holding that the commentary to the Sentencing Guidelines is not binding on the federal courts.  We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline. *Id*. at 1915

In ruling upon the issue, the *Stinson* Court explained in detail the difference between what deference is owed when an interpretation of a *statute* is being given by a federal agency, and what deference is owed when that same federal agency is interpreting one of its own *regulations*.  As to the latter, the agency interpretation of its own regulation is of "controlling weight" and "binding" upon the federal courts:

> We also find inapposite an analogy to an agency's construction of a federal statute that it administers.  Under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), if a statute is unambiguous the statute governs; if, however, Congress' silence or ambiguity has "left a gap for the agency to fill," courts must defer to the agency's interpretation so long as it is "a permissible construction of the statute." *Id*., at 842-843, 104

S.Ct., at 2781-2782.   Commentary, however, has a function different from an agency's legislative rule.   Commentary, unlike a legislative rule, is not the product of delegated authority for rulemaking, which of course must yield to the clear meaning of a statute.   *Id.*, at 843, n. 9, 104 S.Ct., at 2781, n. 9.   Rather, commentary explains the guidelines and provides concrete guidance as to how even unambiguous guidelines are to be applied in practice.

Although the analogy is not precise because Congress has a role in promulgating the guidelines, we think the Government is correct in suggesting that the commentary be treated as an agency's interpretation of its own legislative rule.  Brief for United States 13-16.   The Sentencing Commission promulgates the guidelines by virtue of an express congressional delegation of authority for rulemaking, see *Mistretta v. United States*, 488 U.S., at 371-379, 109 S.Ct., at 654-659, and through the informal rulemaking procedures in 5 U.S.C. § 553, see 28 U.S.C. § 994(x).   Thus, the guidelines are the equivalent of legislative rules adopted by federal agencies.   The functional purpose of commentary (of the kind at issue here) is to assist in the interpretation and application of those rules, which are within the Commission's particular area of concern and expertise and which the Commission itself has the first responsibility to formulate and announce.   In these respects this type of commentary is akin to an agency's interpretation of its own legislative rules.    As we have often stated, provided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given "controlling weight unless it is plainly erroneous or inconsistent with the regulation."   [case cites omitted]

*                *                *

In assigning these functions to the Commission, "Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest."  *Braxton v. United States*, 500 U.S. 344, 348, 111 S.Ct. 1854, 1858, 114 L.Ed.2d 385 (1991).   Although amendments to guidelines provisions are one method of incorporating revisions, another method open to the Commission is amendment of the commentary, if the guideline which the commentary interprets will bear the construction.   **Amended commentary is binding on the federal courts even though it is not reviewed by Congress, and prior judicial constructions of a particular guideline cannot prevent the Commission from adopting a conflicting interpretation that satisfies the standard we set forth today.** (emphasis added)  *Id.*

Given the importance of the point to the case at hand, Selective believes it important to review the several Supreme Court decisions that were cited in *Stinson*.   Selective believes it important to make clear that this principle applies with full force in both civil and criminal cases.

In *Bowles v. Seminole Rock and Sand Co.*, 65 S.Ct. 1215 (1945), the Fifth Circuit was reversed

by the Court for not according "controlling weight" to an administrative interpretation of a

federal regulation concerning inflation control measures during World War II.  The high court's

explanation of where the Fifth Circuit had fallen into error was as follows:

> The problem in this case is to determine the highest price respondent charged for
> crushed stone during March, 1942, within the meaning of Maximum Price
> Regulation No. 188.  Since this involves an interpretation of an administrative
> regulation a court must necessarily look to the administrative construction of the
> regulation if the meaning of the words used is in doubt.  The intention of
> Congress or the principles of the Constitution in some situations may be relevant
> in the first instance in choosing between various constructions.  But the ultimate
> criterion is the administrative interpretation, which becomes of controlling weight
> unless it is plainly erroneous or inconsistent with the regulation.  *Id*. at 1217

In *Robertson v. Methow Valley Citizens Council*, 109 S.Ct. 1835 (1989), the case

involved interpretation of both a statute and a regulation.  After the statutory construction issues

were handled, the Court then turned to the regulatory construction issue at page 1849 of the

Opinion.  After reviewing the agency's interpretation of its own regulation, the Court held, "This

interpretation of the agency's own regulation is not 'plainly erroneous or inconsistent with the

regulation,' and is thus controlling." *Id*. at 1850.  The appellate court in *Robertson* was reversed

upon this very point, among others.  Similarly, in *U.S. v. Larionoff*, 97 S.Ct. 2150 (1977), the

Court explained that this rule applies even where, and seemingly particularly where, various

"ambiguities" can be shown:

> These regulations, as the Court of Appeals pointed out and the Government freely
> concedes, contain a number of ambiguities.  See 175 U.S.App.D.C., at 40-42, 533
> F.2d at 1175-1177.  We need not tarry, however, over the various ambiguous
> terms and complex interrelations of the regulations.  In construing administrative
> regulations, "the ultimate criterion is the administrative interpretation, which
> becomes of controlling weight unless it is plainly erroneous or inconsistent with
> the regulation.  *Id*. at 2155

In *Udall v. Tallmann,* 85 S.Ct. 792 (1965), the Court shed further light upon the rule as

follows:

> When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration.  "To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." [case cites omitted]  "Particularly is this respect due when the administrative practice at stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new.  *Power Reactor Development Co., v. International Union of Electricians*, 367 U.S. 396, 408, 81 S.Ct. 1529, 1535, 6 L.Ed.2d 924.  When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order.

> "Since this involves an interpretation of an administrative regulation a court must necessarily look to the administrative construction of the regulation if the meaning of the words used is in doubt. . . . (T)he ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation."  *Id*. at 801

Applying these five U.S. Supreme Court decisions to the matter at hand, Defendant respectfully submits the following analytical path for the Court's consideration:

Congress initiated the NFIP in 1968 upon the fundamental premise that the Executive Branch was to operate it "to the maximum extent practicable" through the services of the private insurance industry.  42 U.S.C. §4001(b).  That premise has never changed.

Congress expressly granted rule-making authority to FEMA "to provide by regulation for general terms and conditions of insurability."  42 U.S.C. §4013(a).  FEMA did so, and the SFIP represents the principle regulation enacted pursuant to this statute.  It is precisely this Congressional grant of authority that the Plaintiff is seeking to neutralize through a tort action.

Congress also expressly granted unrestricted rule making authority to FEMA to devise "any necessary arrangements" that were deemed necessary to enlist the services of the U.S. insurance industry in the success of the NFIP, in the role of "fiscal agents" of the United States.

14

42 U.S.C. §4071(a).  This very broad rule making authority is made even broader by 42 U.S.C. §4081(a), which authorizes "any contracts, agreements, or other appropriate arrangements which may, from time to time be necessary."[4]  Acting pursuant to this express delegation of regulatory authority and rule making power, and in pursuit of a core premise of the program, that being obtaining the services of the U.S. insurance industry in making the program a success, FEMA devised and implemented the existing "Arrangement" as a federal regulation (a law) at 44 C.F.R. Pt. 62, App. A.  Notably, federal courts have never questioned the wisdom of the "Arrangement" that the Government has entered into between the insurance industry and FEMA for the purpose of making the NFIP a success.  As the Seventh Circuit recently noted in *Downey v. State Farm*, 266 F.3d 675 (7th Cir. 2001):

> [A]lthough private insurers issue the policies, FEMA underwrites the risk.  The insurance companies handle administrative business for FEMA by selling policies and processing claims but do little else (unlike the Industry Program, where the private companies underwrite the risk). Arrangements like this make sense. FEMA likely is unsuited to tasks such as selling insurance and collecting fees, and even less adept at processing individual claims for flood damage.  By purchasing the services of a more efficient claims processor, FEMA saves money. *Id*. at 67-80

Ten years ago, and at a time well before a recent spate of NFIP appellate decisions wherein the nature of the relationship between the WYO companies and FEMA had been fully explored, the Fifth Circuit wrote its decision in *Spence v. Omaha*, 996 F.2d 793 (5th Cir. 1993). In *Spence*, the Fifth Circuit interpreted FEMA's then-existing Arrangement with the carriers in a way that lead it to conclude that the companies, and not FEMA, would be liable if a company

---

[4]  Note that FEMA's financial connection to insurance agents is governed separately from its relationship with the companies by 42 U.S.C. §4081(c).  Should Plaintiff seek to argue that §4081(c) has any bearing on any claim against an insurance "company," despite the fact that "companies" are not listed therein, then counsel can immediately provide documents and

were cast in judgment based upon imputed fault for the acts of an insurance agent.

Irrefutably, FEMA changed the text of the Arrangement after *Spence*.  Without question, the text, a.k.a. law, which was before the Fifth Circuit in *Spence*, no longer exists.  The document that governed the relationship between FEMA and the companies in 1993, is not the same document that has been signed by the companies and FEMA on an annual basis since 1997.

Accordingly, and on authority of the above-referenced Supreme Court decisions, Selective respectfully submits that both the declaration and the manual, and not *Spence* are to be given "controlling weight" in this Honorable Court's interpretation of the <u>current</u> Arrangement, and further, that said documents' interpretation of the current Arrangement is with all and due respect "binding" upon this Honorable Court.  Under that declaration, Selective is the Government's fiscal agent, and not the principal of the Plaintiff's own independent agent.  Liability imposed contrary to this rule will be reimbursed under the Arrangement.

## IV.  HOLDINGS VERSUS DICTA

As a next point, Defendant submits the following points in response to Plaintiff's citations at the bottom of page 8 of the Opposition Memorandum, wherein Plaintiff implies that various district court level decisions from this area constitute holdings based on *Spence* that policy procurement issues in the context of the NFIP are not preempted.  First, the success or failure of the Plaintiff's Amended Complaint in no sense turns on whether Plaintiff's "claims" are preempted.  Preemption is only one of several problems facing the Plaintiff's claim.  Also, Defendant is not contending that there is literally no type of "claim" that could ever be brought in the context of NFIP policy procurement, such that <u>all</u> "claims" are preempted.  However, that

legislative history from 1981 when that subsection was enacted showing <u>exactly</u> why this subsection was enacted.  It has nothing to do with the "companies."

overly broad statement in no sense means that <u>every</u> "claim" raised in the context of policy procurement could succeed.  The point <u>at bar</u> is that the particular <u>type</u> of policy procurement claim being raised at bar, that being a specific claim of an affirmative oral misrepresentation ***of federal regulations***, is simply a claim that can't work.  The reason it can't work is twofold: (1) every citizen is charged with knowledge of the law; and (2) there is no other flood insurance program to which one could turn.  *Heckler, supra*; *Garcia, supra*.

Notably, even courts that have squarely held that preemption does not apply even to NFIP claims handling disputes, have nevertheless held that federal law provides the duties of care in these cases.  See *Stanton v. State Farm*, 78 F.Supp.2d 1029 (D.S.D. 1999), wherein the court held that the NFIP did not preempt state law even in the context of NFIP claims handling, and then *Stanton v. State Farm*, 2001 WL 1380199 (D.S.D. September 28, 2001), wherein the same court held under traditional state-law-based duty/risk analysis that a state-law-based extra-contractual or claim could not survive summary judgment in the context of the NFIP where a proof of loss had not been submitted, specifically because the WYO carrier "had no duty to act on any claim submitted by Stantons until they timely submitted a sworn proof of loss."  *Id*. at *5. In the matter at bar, the rules of care that govern the parties' conduct are those of this federal program.  Moreover, as was held in *Heckler*, the Plaintiff participated in the program under a "duty to familiarize" herself with the program's rules.  *Heckler, supra*, 104 S.Ct. at 2225-26. Wholly apart from any question of "preemption," this Plaintiff's tort-based claims cannot succeed because she must be held by this Court to already <u>know</u> what the actual rules were.

As one additional point, it is a basic proposition that courts do not rule upon, or issue holdings upon, questions that are not directly addressed to them in the case or controversy before the court.  Points made in cases that are not necessary to the case at hand come under the rubric

of "dicta." As Justice Stevens remarked in his dissent in *City of Oklahoma City v. Tuttle*, 105 S.Ct. 2427 (1985), "As is so often true, Justice Cardozo has provided us with the proper response: 'I own that it is a good deal of a mystery to me how judges, of all persons in the world, should put their faith in dicta.' B.Cardozo, *the Nature of the Judicial Process 29* (1921)." *Id*. at 2446. Respectfully, and just as this Honorable Court would take a dim view of a lawyer arguing that a matter of dicta in one of this Court's prior opinions constituted a "holding," it would seem odd to argue to this Court that the comments made in Plaintiff's Opposition Memorandum at the bottom of page 8 should be construed as representations of "holdings" from those decisions. Those cases clearly were claims handling cases, not policy procurement cases. Those judges did not have before them the problem now confronting this Honorable Court.

In contrast to the Plaintiff's suggestion of other "holdings" based on *Spence*, this Court is asked to examine the recent decision of *Studio Frames v. Village Ins. Agency*, 2003 WL 1785802 (M.D. N.C. March 31, 2003). Just as is occurring in the matter at bar, the plaintiff in *Studio Frames* sought to make an end-run-around FEMA's regulations governing whether the monies sought by Studio Frames could be paid, by resorting to application of state tort law. In *Studio Frames*, the plaintiff was the lease holder of the property, and not its owner. Under these circumstances, the scope of coverage for building elements was greatly reduced. Studio Frames claimed that at the time the policy was sold, no one informed it of this fact, and that by omission, it was lead to believe that it had the full coverage for its property. Studio Frames sued both the carrier and the independent agent.

Studio Frames sought to win the case against WYO carrier Standard Fire by arguing that claims arising out of how flood policies are sold are not preempted, and that it was entitled to a jury trial upon any argument it would make upon that subject. It also argued that Standard Fire

had engaged in a deceptive trade practice by not constructing the flood insurance application in a manner that would inquire as to whether the applicant for the policy was the owner of the building or not. The plaintiff in *Studio Frames* sought to raise these claims well <u>after</u> it had become clear that the chances of success for the plaintiff under federal regulations was slim at best. As such, Studio Frames filed a Motion to Leave to amend its pleadings as the case was nearing its trial date. In response, the district judge denied the Motion for Leave as untimely under the matter's Rule 16 Scheduling Order, but went on to rule that the amendment would be denied on the basis of futility, even if it had been timely filed. *Id*. at *3. The basis for this holding was explained by the court as follows:

> FN6. Studio Frames asserts that its unfair and deceptive trade practice claim deals with procurement of the policy, and thus should not be preempted by federal law. *See Spence v. Omaha Indem. Ins. Co.*, 996 F.2d 793 (5th Cir. 1993). *Spence* involved affirmative misrepresentations made by an agent of the WYO company to an insured concerning the scope of flood insurance coverage. In this case, however, Studio Frames purchased the policy at issue through its own insurance agent as a condition for receiving a small business loan; there were no representations made by Standard Fire employees regarding the scope of coverage.
>
> The standard flood insurance application form, as promulgated by FEMA pursuant to Congressional authority, does not ask whether an entity seeking building coverage is an owner of the building. Studio Frames asserts that Standard Fire should have altered the standard form application by ascertaining whether Studio Frames was the owner of the building or a tenant in the building. Pursuant to statutes enacted by Congress and regulations promulgated by FEMA, Standard Fire must strictly comply with the national flood insurance program and does not have the authority to alter the standard flood insurance application. Imposition of a duty to do so based on state law would directly conflict with federal statutes and regulations. If an unfair and deceptive trade practice claim were allowed to be added in this case, it would be impossible for Standard Fire to comply with both state law and federal law. Studio Frames' Motion to Amend Complaint to add and unfair and deceptive trade practice claim is DENIED due to conflict preemption. *Id*. at *5.[6]

---

[6] Critical analytical point: The Supreme Court has rejected "impossibility" of compliance with both state and federal law as the lone test of conflict preemption. For a very detailed discussion

*Studio Frames* is indeed a "holding" based upon *Spence*, and it is indeed hard to distinguish from the instant controversy. In both cases, the federal court faced a claimant seeking to resort to application of state tort law specifically to avoid the consequences of federal laws directly on point. Second, the *Studio Frames* matter involved an independent insurance agent, just as does the matter at bar. *Id*. at FN 6. Also, both *Studio Frames* and the matter at bar involve a clear conflict wherein the carrier would not be liable under federal law, but did face at least the possibility of liability under state law under the exact same facts. In terms of "holdings" applying *Spence* to similar factual situations, *Studio Frames* is directly on point.

## V.  PLAINTIFF'S REMAINING ARGUMENTS

Defendant will now review the six different sections of the "Argument" portion of Plaintiff's Opposition Memorandum. This review will be conducted in light of the above-referenced U.S. Supreme Court decisions.

### A.  Has Fraud Been Plead with Particularity?

As an initial matter on this point, this Honorable Court is asked to consider the issue here in light of the comment made by the Supreme Court in *Heckler* concerning claims of oral misrepresentations, wherein the Court noted, "it is not merely the possibility of fraud that undermines our confidence in the reliability of official action that is not confirmed or evidenced by a written instrument." *Heckler, supra* 104 S.Ct. 2227. Plaintiff contends that her claim of fraud is stated with sufficient particularity, based upon nothing beyond the following vague explanation as set forth at page 4 of Plaintiff's Opposition Memorandum:

Count 1 alleges that **on or about** December 27, 1991 **an agent or employee** of

of how conflict preemption issues are to be analyzed, please see *Geier v. American Honda*, 120 S.Ct. 1913, 1921, and 1925-27 (2000).

the Defendant made misrepresentations **regarding** the nature and scope of coverage provided by the SFIP as well as misrepresentations **regarding** the procedure for making a claim under the policy, all with the intent to have Plaintiff rely on said misrepresentations to induce her into purchasing a SFIP through the Defendant.    Plaintiff **relied** on these misrepresentations, as reiterated by the adjuster, **all to her determent and loss**.  (emphasis added)  (Opp. Memorandum pg. 4).

Without contest, the Amended Complaint is hopelessly vague as to any specifics.  First, Plaintiff is not sure of whether the statement happened before she bought the policy, or perhaps shortly after.  Next, she is unsure of whether the misrepresentations were made by "an agent," which in this case would have been her independent insurance agent, or whether they were made by "an employee" of the Defendant.   (Under *Heckler* and *Garcia*, her claims fail either way.) Next, all that she can say about the misrepresentations are that they were "regarding" the scope of coverage and the procedure for making a claim.  Then, she asserts that she "relied" upon these misrepresentations "all to her determent and loss," but how is never explained.  With all respect, this Honorable Court is respectfully asked to compare the purposes behind the particularity requirement of F.R.C.P. Rule 9(b), and find that Plaintiff's effort at asserting a claim of "fraud" comes nowhere close to meeting the requirement.

Defendant does not raise these points frivolously.   Attached hereto as Exhibit A are documents showing that Ms. Deverant's flood insurance application was sent to Selective as a new policy application in 1995, not 1991, and, that her dealings were indeed with her own independent insurance agent.   These documents are not submitted as "evidence."   They are submitted to apprise the Court that Selective has no idea of what the Plaintiff is referencing when she claims oral misrepresentations occurring "on or about December 27, 1991," or that a Selective employee was involved.   Under FRCP Rule 9(b), Selective is entitled to know, with particularity, why <u>it</u> is being sued for fraud.

21

**B.  The Negligent Misrepresentation Claim**

In addition to the points made above concerning the fraud claim, Defendant would add here a focus upon element four of the negligent misrepresentation claim.  At pg. 5 of the Opposition Memorandum, Plaintiff submits that the fourth element of her negligent misrepresentation claim requires proof of a misrepresentation of material fact "which results in injury to a party acting in justifiable reliance on the misrepresentation."  In *Heckler*, the Court squarely held that a participant in a federal program has "a duty to familiarize itself with the legal requirements" of that program.  *Heckler, supra* 104 S.Ct. 2225-26.  According to *Heckler*, such a person is "on ample notice" of the requirements of the program the person seeks to participate within. *Id.* at 2227. Given that the affirmative acts of misrepresentation in *Heckler* were found to be insufficient to sustain a claim of reasonable reliance against even "a private party," it is hard to see how Ms. Deverant could claim before this Honorable Court, under indistinguishable circumstances (presuming the truthfulness of her claims) that she acted "in justifiable reliance on the misrepresentation" that she is claiming.

As an additional point, and one that is raised with regard to both the fraud and the misrepresentation claim, Selective stresses that the Plaintiff refuses to explain whether the misrepresentation was stated by an agent or by an employee.  As was found in *Studio Frames, supra*, it makes a difference.  (Under *Heckler*, the claim fails regardless of who it is brought against.)  Also, and as noted earlier, this Honorable Court has already dismissed all claims concerning claims handling.

**C.  Time Limitations**

The essence of the Plaintiff's claim here is that she was ignorant of the fact that she had been provided the wrong information as to what the regulations actually provided until after she

suffered a loss and made a claim for benefits under the program.  It is hard to understand how she can make this claim in light of *Heckler* and *Federal Crop Ins. Corp. v. Merrill*, 68 S.Ct. 3 (1947), which is itself repeatedly cited in *Heckler*.  See also 44 U.S.C. §1507, which provides that publication in the Federal Register "is sufficient to give notice of the contents of the document to a person subject to or effected by it."  The Standard Flood Insurance Policy has been published in its entirety in both the Federal Register and the Code of Federal Regulations several times since 1991.  Accordingly, Ms. Deverant is charged with knowing the truth as of the date she became a participant in the program, and under no circumstances may she viably claim her ignorance in the law for 12 years.

Respectfully, if such a theory would work, then any participant in the NFIP (there are 4.39 million policy holders) could avoid the consequences of any of the rules enacted by FEMA within the SFIP, merely by contending that at the time they purchased their policy, someone told them that they were "fully covered," and that they would not have to do "anything" at the time a claim arose.  Every such person who was believed on this point by a finder of fact, would have no consequences as a result of the federal laws designed to govern these circumstances for all concerned.  Plaintiff's attempt at bar squarely puts at issue the concern of the U.S. Supreme Court in *Heckler*, wherein it wrote, "When the government is unable to enforce the law because the conduct of its agents has given rise to estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined.  *Heckler, supra* 104 S.Ct. 2224.

### D.  "Immunity" from the Code of Federal Regulations

Plaintiff's arguments in this regard were addressed above.  To reiterate, Defendant is not contending that it would be "immune" from any type of claim arising from policy procurement.  However, because of the cases noted earlier, the particular type of claim this Plaintiff is

attempting simply is not viable.

### E.  Constructive Knowledge

Plaintiff's arguments here are based upon caselaw that interprets private insurance policies.  No authority is cited to indicate that the courts of Pennsylvania (state or federal) would not abide *Heckler*, or *Merrill*, or 44 U.S.C. §1507.

### F.  Futility

Defendant has indeed bolstered its Rule 12(b)(6) Motion to Dismiss by arguments that the amended pleadings run afoul of Rule 15(a) Doctrine of Futility.  (Memorandum in Support of Motion to Dismiss, pg. 13).  However, this section of Plaintiff's Response Memorandum seems to imply that Defendant filed a motion solely predicated upon F.R.C.P. Rule 15(a).  Pending before the Court is a Rule 12(b)(6) Motion to Dismiss.

### CONCLUSION

Selective respectfully asks that this Honorable Court, upon all of the authorities cited herein and in Selective's Memorandum in Support of Rule 12(b)(6) Motion to Dismiss, schedule this matter of public concern for oral argument before this Honorable Court, and thereafter, dismiss the remainder of this case in its entirety, with prejudice and at the Plaintiff's cost.

Respectfully submitted,

NIELSEN LAW FIRM, LLC                                 By:_____
Gerald J. Nielsen    La.S.B. # 17078                  DANIEL KREBBS
Attorney-in-Charge                                    MARSHALL, DENNEHEY, WARNER,
The Pelican Building                                  COLEMAN & GOGGIN
2121 Airline Drive, Suite 200                         1845 Walnut St., 21st Fl.
Metairie, Louisiana 70001                             Philadelphia, Pennsylvania 19103
(504) 837-2500                                        (215) 575-2793
(504) 832-9165 FAX                                    (215) 575-0856 FAX
Of Counsel

                                                      Local Counsel for Defendant,
Of Counsel for the Defendant                          Selective Insurance Company, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served on Plaintiff's counsel, Patrick G. Murphy, Esq., Kelley and Murphy, Union Meeting Corporate Center V, 925 Harvest Drive, Suite 160, Blue Bell, Pennsylvania 19422.

Done, this ____ day of April, 2003.


Daniel Krebbs